Submitted on briefs October 29, reversed and remanded December 18,
    1917, opinion sustained on petitions for rehearing January 15,
    1918.

# STILLWELL *v.* HILL.*

### (169 Pac. 1174.)

**Sales—Action for Price—Affirmative Denial.**

1.  In action for hay sold, a denial that more than a certain part
of the hay was delivered, and an affirmative allegation that plaintiffs
failed to deliver the balance of the hay contracted for, amounted to
no more than an affirmative denial, and not pleading, as a counter-
claim or defense, damages occasioned by breach of the contract to
deliver all the hay.

**Judgment—Matters Concluded.**

2.  When the second action between the same parties is upon a
different claim or demand or cause of action, the judgment in the first
suit operates as an estoppel only as to the point or question actually
litigated and determined, and not as to other matters which might
have been litigated and determined, whether the judgment is used
in pleading as a technical estoppel or is relied on by way of evidence
as conclusive *per se.*

**Judgment—Matters Concluded.**

3.  The omission to take advantage of matter of counterclaim as a
defense is no bar to a cross or separate action upon it, so that, though,
the cross-claim be admissible by way of defense, the defendant
has an option to avail himself of it in that form, or to sue upon it in
another action.

**Judgment—Splitting Defenses.**

4.  Defendants in action for hay sold could elect whether they would,
in that action, plead and recover on their counterclaim for damages
for failure of plaintiffs to deliver all the hay contracted for, or deny
the delivery and bring an independent action for damages resulting
from failure to deliver.

> [As to who must bear the loss when the property is lost after
> sale but before payment, see note in 22 **Am. St. Rep.** 866.]

**Judgment—Matters Concluded.**

5.  Where sellers of hay sued for balance on the contract, and the
issue whether the hay representing such balance had been delivered
was determined against them, they could not, when later sued by the
purchasers for failure to deliver such balance of the hay, plead as a
separate defense and counterclaim their delivery of such hay; the
prior judgment being conclusive upon such issue.

---

*Authorities discussing the question of duty to prevent or reduce.
damages on breach of contract for sale or purchase are collated in a
note in 52 **L. R. A.** 259.                            REPORTER.

**Judgment—Waiver of Estoppel of Former Judgment.**

6. The estoppel of a former judgment, determining that sellers had not delivered all the hay contracted for, was not waived by the purchasers bringing an action for damages for the failure to deliver the full amount contracted for, since any such waiver must necessarily relate to a question determined in the former action.

**Sales—Damages.**

7. The measure of damages for the breach of an executory contract for the sale and delivery of personal property is the difference between the contract price and the market value at the time and place of delivery, or within a reasonable length of time thereafter.

**Damages—Duty to Reduce.**

8. The law imposes upon a party injured by another's breach of contract the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible, and if by his negligence or willfulness he allows the damage to be unnecessarily enhanced, the increased loss, when it was avoidable by the performance of his duty, falls upon him.

**Evidence—Market Value.**

9. Where the value of personal property is in issue, if the same has a market value at the time and place in question, the evidence is usually confined to its value at such time and place, or at a reasonable time before and after that particular time.

**Evidence—Market Value.**

10. Where the value of personal property is in issue, if it has no market value at the time in question, the market value at some other time, before or after, may be shown.

**Evidence—Value.**

11. In action for failure to deliver hay, where no difficulty appeared in proving its market value at or about the time it was contracted to be delivered, evidence of its market value several months thereafter, when market conditions were entirely different, was inadmissible.

**Sales—Damages.**

12. The rule limiting damages for nondelivery of hay contracted for to the difference between the contract price and the market price at the time and place of delivery would not be affected by the sellers' further failure, under the contract, to furnish a feeding place for the purchasers' stock, necessitating buying hay at or transporting it to another place, since these would be separate elements of damage.

**Appeal and Error—Reversal—Remanding Case.**

13. Under Section 3, Article VII, of the Constitution, as to disposition of case on appeal, in action for breach of contract, a portion of verdict for plaintiff which was based on evidence admitted under an erroneous theory of measure of damages would, on appeal, be eliminated from the judgment for want of competent evidence to support it, and judgment reversed and cause remanded, with directions to enter judgment for plaintiffs for the balance of the verdict.

87 Or.—8

From Union: JOHN W. KNOWLES, Judge.

In Banc.   Statement by MR. JUSTICE BEAN.

This is an action to recover damages for the breach of a contract for the sale of hay.   Verdict and judgment went for plaintiffs and defendants appeal.

On September 22, 1915, the defendants, H. M. C. Company, and the plaintiffs, Stillwell & Proffitt, entered into an agreement in writing whereby the former agreed to furnish to the latter 400 tons of hay, more or less, delivered in the stack upon its premises known as the H. M. C. Company ranch, located in Union County, Oregon, at the price of $6 per ton on measurement of 480 cubic feet to the ton.   It was further contracted that Stillwell & Proffitt should have the privilege of using certain lands described in the contract for the purpose of pasturing livestock during the time they were feeding the hay purchased, for the sum of $350.   The hay consisted of 25 certain stacks of hay selected and agreed upon by the parties, 23 of which were located upon the pasture lands mentioned.   It is admitted that the 25 stacks contained 548 tons of 480 cubic feet each.   About the time of signing the contract Stillwell & Proffitt turned several head of cattle into the pasture lands where they remained during the fall and winter seasons of 1915 and 1916. On October 1st, before the hay had been measured, a fire broke out upon adjoining lands and, without the fault of either of the parties to this action, spread over these lands and destroyed 13 stacks of the hay stacked thereon, amounting to 283 tons according to the measurement of the remaining portion.   On October 22d, the 12 remaining stacks were measured by the parties and found to contain 263 tons for which the plaintiffs paid the defendants $6 per ton, aggregating

$1,578, and also paid them $350 for pasture land, refusing to pay for the hay burned. Thereafter, on January 9, 1916, H. M. C. Company brought an action in the Circuit Court of the State of Oregon for Union County against Stillwell & Proffitt, alleging that they had sold and delivered on September 22, 1915, the pasture land mentioned for $350 and 548 tons of hay for $6 per ton, aggregating $3,638, and that they had paid H. M. C. Company $1,928, leaving a balance of $1,710, for which judgment was asked.

Stillwell & Proffitt, as defendants therein, answered the complaint denying the delivery of the hay burned or the delivery of more than 263 tons; alleging that they paid $1,578 for the 263 tons, and $350 for the pasture, aggregating $1,928, and, in effect, denying any liability for the hay burned; and prayed for "judgment against plaintiffs for their costs and disbursements" in the action, "and that they be allowed to go hence without day."

A reply was filed putting the cause at issue and the same was tried to the court and jury resulting in a verdict and judgment in favor of the defendants Stillwell & Proffitt for their costs and disbursements. No appeal was taken from this judgment.

In October, 1916, Stillwell & Proffitt brought this action to recover damages against H. M. C. Company, defendants, for the alleged breach of the contract of September 22, 1915, in failing, neglecting, and refusing to deliver to them 283 tons of the hay mentioned in the contract. To the complaint in this action the defendants, H. M. C. Company, filed their answer putting in issue the allegations thereof, and, among other things, set up as a bar to the prosecution of this action the record and judgment in the former action of *H. M. C. Company* v. *Stillwell & Proffitt.* To the

separate answers the plaintiffs demurred on the grounds that the same did not state facts sufficient to constitute a defense. The demurrer was sustained by the court. The case was tried upon the issues made by the pleadings and resulted in a verdict and judgment in favor of the plaintiffs Stillwell & Proffitt, in the sum of $1,705. Owing to a ton or two of the hay having been used for a miscellaneous purpose there is a slight discrepancy in the figures of the number of tons.          REVERSED AND REMANDED WITH DIRECTIONS.

For appellants there was a brief submitted over the names of *Mr. Charles H. Finn* and *Messrs. Crawford & Eakin.*

For respondents there was a brief prepared and submitted by *Mr. Francis S. Ivanhoe.*

MR. JUSTICE BEAN delivered the opinion of the court.

1, 2. The first question for determination is whether the judgment in the former action of *H. M. C. Company* v. *Stillwell & Proffitt,* entered on March 19, 1916, is a bar to the prosecution of this action. From the pleadings in the former action which have been referred to briefly, it is noticed that Stillwell & Proffitt denied the delivery of more than 263 tons of hay and affirmatively alleged that H. M. C. Company failed to deliver the balance of the 283 tons of hay mentioned in the contract. As we view the matter this allegation amounted to no more than an affirmative denial. They did not in the first action plead their damages occasioned by the breach of the contract as a counterclaim or defense. It is a well-settled rule of law that when the second action between the same parties is upon a different claim or demand, or cause of action, the judgment in the first suit operates as an estoppel only as to the

point or question actually litigated and determined, and not as to other matters which might have been litigated and determined. This doctrine holds true whether the judgment is used in pleading as a technical estoppel, or is relied on by way of evidence as conclusive *per se*. In all cases it should appear that the first judgment determined the actual question at issue between the parties, and that the precise question was raised and decided in the former suit. On the other hand it is equally well established that a fact which has been already tried and determined by a court of competent jurisdiction cannot be contested again between the same parties, and that where some controlling fact or question material to the determination of both actions has been determined in a former suit, and the same fact or question is again at issue between the same parties, its adjudication in the first will, if properly presented, be conclusive of the same question in the latter suit: 15 R. C. L., p. 973, § 450; *Barrett* v. *Failing*, 8 Or. 152, 156; *La Follett* v. *Mitchell*, 42 Or. 465 (69 Pac. 916, 95 Am. St. Rep. 780); *Ruckman* v. *Union Ry. Co.*, 45 Or. 578, 581 (78 Pac. 748, 69 L. R. A. 480); *Paulson* v. *Oregon Surety etc. Co.*, 70 Or. 175, 180 (138 Pac. 838); *Cromwell* v. *County of Sac*, 94 U. S. 355, 356 (24 L. Ed. 195).

Section 449 of 15 R. C. L. (p. 972) reads thus in part:

"While a judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them, it does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiffs might have joined, but which in fact are not joined or embraced in the pleadings."

3. In the former action the defendants Stillwell & Proffitt, could have set up their counterclaim for damages

and had the same adjudicated therein, but they did not do so. They were not compelled to take such course or be precluded from bringing an independent action for the same. They had an election to use such cross-demand as a defense by way of recoupment or to bring a separate action upon it. The omission to take advantage of matter of counterclaim as a defense is no bar to a cross or separate action upon it, so that though the cross-claim be admissible by way of defense the defendant has an option to avail himself of it in that form or to sue upon it in another action. The reason for allowing the defendant such an option is that a different rule would greatly diminish the benefit to which he is entitled and in some cases wholly neutralize it. It may require some time for the development of the injury which will result from plaintiff's misconduct or default. It is unreasonable, therefore, that he should have the right to fix the time at which the money value of his wrongdoing or omission shall be ascertained. That right is given to the party not in default: 1 Sutherland, Damages (3 ed.), § 187, p. 470; Bigelow on Estoppel (6 ed.), p. 202. At page 203 of the last text-book mentioned, it is stated:

"No suit can be maintained except upon a legal ground of action. Now, as one cause of action cannot in itself alone, when merged in judgment, carry another independent cause of action with it, it is difficult to understand how a judgment for the plaintiff without plea can extinguish a counter right of action by the defendant, however closely connected the two claims may be. Everyone has the right to try his own case, and in his own way."

4. Stillwell & Proffitt, as defendants, had the right in the former action to elect as to whether or not they would plead and seek to recover on their counterclaim for damages when sued for the purchase price of the

hay alleged to have been sold and delivered to them, or deny the delivery and bring an independent action for damages resulting from a failure to deliver: 19 Ency. Plead. & Prac., p. 731; 2 Black on Judgments, § 761; *Pruitt* v. *Muldrick,* 39 Or. 353–358 (65 Pac. 20) ; *Hoover* v. *King,* 43 Or. 281, 287 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L. R. A. 790) ; *Burnett* v. *Marrs,* 62 Or. 598 (125 Pac. 838) ; *Krebs Hop Co.* v. *Livesley,* 59 Or. 574, 584 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758). The question of the damages suffered by the present plaintiffs was not in issue nor adjudicated in the former action. The claim of plaintiffs in this action is not in any way inconsistent with the findings or questions determined in the former judgment.

Mr. Bigelow says in his work on Estoppel (6 ed.), p. 206:

"A judgment is conclusive only in respect of matters necessarily inconsistent with it. Now, the fact of the ill performance of a contract is not inconsistent with a judgment upon the contract by the other party": See also Id., p. 203, note 4.

5. In the present case defendants, H. M. C. Company, as a separate defense and as a counterclaim to plaintiffs' cause of action, set forth the written contract of September 22, 1915, and also the delivery by them to Stillwell & Proffitt and their acceptance of the entire amount of hay contracted to be sold to plaintiffs, including the 283 tons, and insist that they are entitled to judgment therefor at the contract price. This is the identical matter pleaded by H. M. C. Company in the former action. Issue thereon was raised by the answer of Stillwell & Proffitt and the question of the delivery of the 283 tons of hay was tried and determined as shown by the answer, and that judgment has become final. Applying the rules above referred to,

the former judgment is conclusive and binding upon the parties to that extent.

6. In *Cromwell* v. *County of Sac,* 94 U. S. 355 (24 L. Ed. 195), Mr. Justice FIELD said:

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

Counsel for defendants contend that plaintiffs waived and set at large the estoppel by the former judgment. There was no waiver by bringing the present action. Any such waiver must of necessity relate to a question determined in the former action, as in *Cooley* v. *Snake River Dist. Imp. Co.,* 78 Or. 384 (152 Pac. 1190).

At the proper time defendants' counsel asked for appropriate instructions to the jury as to the delivery of the hay, based upon their contention as to the former judgment. This part of the charge to the jury need not be further considered. There was no error in sustaining the demurrer to defendants' separate defenses.

The merits of this case depend upon the damages for the breach of the contract for the sale and delivery of the hay. As to this part the plaintiffs allege that in the early fall of 1915 the plaintiffs had and owned a large band of stock cattle, to wit, between 350 and

400 head, and in the course of their business wished to pasture and feed them during the entire fall and winter seasons of 1915 and 1916, including the months of December, 1915, and January, February, March, and April, 1916, at some point in Union County; that they required for so feeding and pasturing the cattle during the period mentioned, several hundred acres of pasture, suitable for feeding grounds, and from four hundred to six hundred tons of hay; that on account of the failure of the defendants to deliver the remainder of the hay agreed to be furnished, plaintiffs were compelled to and did go into the open market of Union County, Oregon, and purchase 253 tons of hay of like kind, and paid therefor the aggregate sum of $3,312.50, the market value thereof, by reason of which they were damaged in the sum of $1,602.50. They also allege loss by reason of having to remove the cattle to other feeding grounds in the middle of winter and the shrinkage and loss thereof. Mr. Stillwell, one of the plaintiffs'' testified in regard to replacing the hay that:

"Well, when I saw we wasn't going to have hay to run the cattle through I started to rustle around to get some more hay."

He said that he presumed it was in January when he discovered that fact; that the first hay which he purchased for $12.50 a ton to replace that burned was measured January 19, 1916, and arranged for a day or two before that; that about the first of October he knew the hay was burned; that he went to Kansas City to market some cattle and returned in about two weeks; that he may have said in effect that he would not buy any more hay; that if the winter was as mild as the preceding one the 263 tons would be sufficient to carry them through; that about February 6th follow-

ing, he purchased hay from Mr. Krouse at $12.50 a ton; that hay was cheaper up to that time; that he purchased hay of Mr. Reynolds at $16 per ton; that at that time he could not have bought any other hay of any consequence any cheaper with which to feed his cattle.   Indeed, we find an offer of counsel for plaintiffs to prove

"that if the winter of 1915–1916 had been a winter of the same character (as the preceding one) the 263 tons of hay actually delivered, would have been sufficient to have carried his cattle during that time."

It is shown on the part of the defendants that the market price of hay, similar to that contracted to be delivered, the last part of September and during October of that year was from $5.50 to $6.

7, 8. Upon the question of damages, errors numbered 3 to 5, 9 to 14, and 15 to 19 are assigned.   The first class of these assignments involves the admission of evidence over the objections and exceptions of defendants' counsel as to what plaintiffs paid for hay in January, February, and March, 1916, to replace the 283 tons of hay destroyed by the fire of October 1, 1915, and therefore not delivered.   The other assignments of error embrace the action of the court in refusing to give certain instructions requested by defendants and to the giving of certain charges to the jury upon the measure of damages.   All these assignments may be considered together.

The measure of damages for the breach of an executory contract for the sale and delivery of personal property is the difference between the contract price and the market value at the time and place of delivery or within a reasonable length of time thereafter:  8 R. C. L., p. 487, § 48; *Hockersmith* v. *Hanley*, 29 Or. 27, 36 (44 Pac. 497); *Krebs Hop Co.* v. *Livesley*, 59

Or. 574 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758) ; *Russell Miller Milling Co.* v. *Bastasch,* 70 Or. 475 (142 Pac. 355).    At page 479 (of 70 Or.) of the opinion in the last-named case, Mr. Justice BURNETT tersely stated the rule thus:

"It is a plain question of a breach of an executory contract for the sale of personal property at a price specified.    The measure of damages for a breach of such a contract by the purchaser is the difference between the contract price and the lesser market value of the goods at the time of the breach of the contract."

The law imposes upon a party injured by another's breach of contract the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible.    If by his negligence or willfulness he allows the damage to be unnecessarily enhanced, the increased loss when it was avoidable by the performance of his duty falls upon him: *Sherman Center Town Co.* v. *Leonard,* 46 Kan. 354 (26 Pac. 717, 26 Am. St. Rep. 101, 104) ; 8 R. C. L., §.14, p. 442.

9–11.    Plaintiff's counsel stated their position on this question in their brief as follows:

"We submit that it is immaterial when respondents purchased hay to replace the hay burned, if they paid no more than the market price or what it could have been purchased for with suitable feeding grounds, within a reasonable time after they learned appellants would not replace it."

Where the value of personal property is in issue, if the same has a market value at the time and place in question, then the evidence is usually confined to its value at such time and place, or at a reasonable time before and after that particular time: *Comer* v. *Way,* 107 Ala. 300 (19 South. 966, 54 Am. St. Rep. 93) ; *Jones* v. *Morgan,* 90 N. Y. 4 (43 Am. Rep. 131).    If

there is no market value at the time, then the market value at some other time, before or after, may be shown: 8 R. C. L., p. 647, § 190. The admission of evidence as to the value of personal property before or after the time of its loss, or when it should be delivered under the contract is for the purpose of proving the value at the time in question for the want of any better evidence; but this does not permit a party to prove the value of personal property, contracted to be delivered at a certain time, at a later date when the market value has doubled or trebled. There does not appear to have been any difficulty in proving the market value of the hay at or about the time it was contracted to be delivered, or between September 22, 1915, and December 1, 1916. We see no reason for resorting to proof of the price paid nearly three months after the breach of the contract when the market conditions were entirely different. There were no special circumstances to warrant the exercise of a discretion: *Beach* v. *Raritan etc. R. Co.*, 37 N. Y. 457, 470. By some appropriate instruction the jury should have been limited to the market value of the hay at the place and about the time of the contemplated delivery.

The evidence of plaintiffs as to the price paid for the hay in January, February, and March, 1916, was incompetent for the purpose of showing the market value of the hay at the time the same was to have been delivered under the terms of the contract. On October 1, 1915, the plaintiffs had knowledge that the hay was burned and that they could not rely upon the same for the purpose of wintering their cattle. They state in their complaint that early in the fall of 1915 they had between 350 and 400 head of cattle which

they wished to feed during the fall and coming winter and required

"several hundred acres of pasture, suitable for feeding grounds during the winter season of said years, and from 400 to 600 tons of hay."

Knowing this, it was not in compliance with their duty or the exercise of ordinary care for them to speculate upon the mildness or rigor of the coming season, and wait until the latter part of January, 1916, before purchasing a portion of the hay and until February and March before obtaining the remainder to be substituted for that destroyed. If Stillwell & Proffit desired to take chances upon the 263 tons of hay delivered being sufficient for the sustenance of their cattle during the following winter they could do so at their peril.

12, 13. Defendants' counsel requested several instructions to the purport that the court charge the jury, in addition to the rule of damages as above stated, so as to restrict the evidence of the market value of the hay to the period for delivery or within a reasonable time thereafter. The court charged the jury, in substance as requested, with the following qualification that it was the duty of the plaintiffs upon learning that the hay was burned and there was found to be only 263 tons thereof "to have immediately and within a reasonable time * * purchased the same in the market, *if they could purchase such hay with a suitable place to feed the same to plaintiffs' stock."* Defendants' counsel objected and excepted to the modification in the words which we have italicized. In order to counteract the effect of the evidence admitted as to the price paid for hay in January, February, and March, 1916, or to "unring the bell," we think the instruction should have been given without the modifi-

cation. The matter of obtaining a suitable feeding ground whereon to feed the hay was the excuse claimed by the plaintiffs for not purchasing it at an earlier date. Its purchase at a later date would not remedy the inconvenience as to the feeding grounds. The matter of the transportation of the hay, or the place where the cattle were necessarily fed, or their removal to some other suitable place, would under certain circumstances be an element of damages; but we fail to see how it could change the law relating to the measure of damages, as to the time at which the market value of the hay should be established. It is not shown that plaintiffs could not have bought at an earlier date and from the same parties for the then market price, the identical hay which they afterwards purchased. Nor is it shown that they could not have purchased the hay required in the immediate vicinity during the fall of 1915 at the price mentioned in the contract and thereby have reduced the damages to a minimum. On the other hand, the evidence, all of which is contained in the record, shows that by a reasonable effort the hay could have been obtained by plaintiffs before December 1st of that year at the market price of $6 per ton. The expense of moving the cattle and the loss by shrinkage caused thereby were put in evidence and submitted to the jury. By a special verdict $1 was fixed as such loss by shrinkage. The $1,602.50 recovered for the difference between the price paid by plaintiffs for the 253 tons of hay purchased from different parties and the contract price should be eliminated from the judgment for want of any competent evidence to support the same. The balance of $107.50, special damages, should be allowed plaintiffs as compensation for moving their cattle and loss occasioned thereby: Article VII, Section 3, Const. of

Oregon; *Murphy* v. *Panter,* 62 Or. 522 (125 Pac. 292);
*Hoag* v. *Wash.-Oregon Corp.,* 75 Or. 588 (144 Pac. 574,
147 Pac. 756).

The judgment of the lower court is reversed and the
cause will be remanded with directions to enter judg-
ment in favor of the plaintiffs in the sum of $107.50.

REVERSED AND REMANDED WITH DIRECTIONS.

REHEARING DENIED.

MR. JUSTICE BURNETT dissents.

On petitions of appellants and respondents for
rehearing. Both petitions are denied and former
opinion sustained. Rehearing denied.

*Mr. Charles H. Finn* and *Messrs. Crawford & Eakin,*
for defendants-appellants.

*Mr. Francis S. Ivanhoe,* for plaintiffs-respondents.

In Banc. MR. JUSTICE BEAN delivered the opinion of
the court.

In our former memorandum of opinion we indicated
that the judgment of the lower court should be set
aside on account of prejudicial error and judgment was
directed entered under Article VII, Section 3, of the
Constitution, which provides that either party may
have attached to the bill of exceptions the whole tes-
timony, the instructions of the court to the jury and
any other matters material to the decision of the
appeal; and

"if the Supreme Court shall be of opinion, after con-
sideration of all the matters thus submitted, that the
judgment of the court appealed from was such as
should have been rendered in the case, such judgment
shall be affirmed, notwithstanding any error committed

during the trial; or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court."

Counsel for defendants petitioned for a rehearing and called attention to that part of the former opinion wherein it was stated that the $1,602.50 recovered for the difference in the price paid by plaintiffs for the 253 tons of hay purchased and the contract price should be eliminated from the judgment for want of any competent evidence to support the same; that the balance of $107.50, special damages, should be allowed plaintiffs as compensation for moving their cattle and loss occasioned thereby. This balance should be $102.50. In making the memorandum the sum of $1,710.00, which appeared in the record, was evidently remembered as the amount of the judgment instead of $1,705.00, the correct amount. This correction can be made by the clerk. We are impelled to do this upon the retrial of the issue in order that our findings upon this important question of damages for moving a band of about 400 head of cattle three different times during the inclement winter season shall coincide with the findings of the jury in that respect. It is strenuously urged by counsel for defendants that the evidence shows that the expense of moving the cattle the first time is not "greater than three or four dollars, the cost of the two thirty-dollar per month men for one day." We are unable to accede to this contentious argument. It is doubtful if the amount named by defendants' counsel would pay the expenses of one while superintending such removal. It appears from the evidence that the cattle were not all moved at one time,

and that all the circumstances, trouble and expense of so moving the cattle were detailed, although not with every item of expense. Mr. Stillwell, one of the plaintiffs who appears to be a reasonable and conscientious witness, stated in part in regard to the cost of moving the cattle:

"Well, there was extra men and when I got over on the Dobbin place, I had to put on an extra man and team there. I could not tell you just off-hand in dollars and cents how much the extra expense was. It was quite a considerable sum."

That the expense and injury occasioned by moving the cattle amounts to less than $105.50 cannot be believed by anyone familiar with such matters as the jury probably was. It is asserted that this sum is not within the issues raised by the complaint; that part of the complaint reads as follows:

"That by reason of defendants failing, neglecting and refusing to furnish plaintiffs' said hay at the time and place and as they contracted and agreed to do, plaintiffs were compelled to and did, at great cost and expense move said cattle from the feed grounds and pasture lands purchased from defendants as aforesaid, and in the sum of not less than $100; and that by reason of said failure, neglect and refusal of defendants, and the said removal of said cattle from said pasture and feeding grounds, plaintiffs lost in injury to, death and shrinkage that was and could never be returned, in the sum of not less than fifteen hundred dollars."

It is obvious that a much larger amount than that allowed by the jury and by this court was alleged in the complaint. It is evident that the jury allowed a small sum for injury to the cattle other than the one dollar shrinkage, as shown by the special verdict. All the evidence on this phase of the case was carefully weighed by this court and no doubt was so considered

87 Or.—9

by the jury. Defendants' petition for a rehearing is denied.

Plaintiffs filed a petition for rehearing and while no real complaint is made to the re-examination of the facts under the Constitution it is earnestly argued that the evidence in the case showed the market value of the hay which was not delivered to be, at or about the time of the failure to deliver the same, the amount paid by the plaintiffs in January, February and March; and that the court erred in holding that there was failure to prove what the market value of the hay was on or about October 22, 1915, when the remainder was measured, and was not shown to be more than six dollars per ton; but that, on the other hand, it was shown to be no more than that sum. In its entirety Mr. Stilwell's evidence indicates that there was no effort made to purchase hay until long after the date mentioned when the winter season proved to be more severe than he had expected. While he testified that he commenced to look around for hay with suitable feeding grounds he practically admitted that he said in effect that if the winter was not more severe than the prior one the hay which was not burned would be sufficient for wintering his cattle. His statement quoted in our opinion as follows: "Well, when I saw we wasn't going to have hay to run the cattle through I started to rustle around to get some more"; and that about January 12, 1916, he purchased the first lot for $12.50, stating in this connection "no, I found no cheaper hay than twelve dollars and a half," evidently meant that he could not obtain the hay at that time at any less price, and clearly indicates that no effort was made before that time actually to obtain the hay even though he might have inquired in regard thereto. All the evidence indicates that the plaintiffs failed to exercise due diligence to

obtain the hay required by them, within a reasonable time after the alleged failure to deliver. As suggested in our former opinion when the defendants failed to deliver the hay contracted for, and the circumstances in regard thereto were fully made known to plaintiffs on October 22, 1915, and it was understood between the parties that the hay was agreed to be sold for the purpose of feeding plaintiffs' cattle, the plaintiffs were at liberty to do one of two things: go into the market and purchase hay within a reasonable time thereafter, transport the same to the place where the hay was to be delivered, and charge for such transportation as a part of the damages; or to so purchase the hay and move their livestock to the place where it was purchased and where the cattle could be fed. They followed the latter method except as to the time within which such purchase was made.

Counsel for plaintiffs inquire if the court overlooked the fact testified to by Stilwell that the defendants refused to permit plaintiffs to use the feeding grounds named in the agreement for feeding the unburned hay, and contend that this was sufficient excuse for plaintiffs not purchasing the hay or moving the same to the grounds leased from the defendants. This necessitates a reference to the written contract between the parties from which it appears that the plaintiffs obtained from the defendants

"the privilege of using for the purpose of pasturing their livestock that portion of the lands controlled by party of the first part, H. M. C. Company, located on the west side of Catherine Creek adjoining the H. M. C. Company ranch proper, for the sum of $350."

In our judgment this part of the contract is separate from the agreement as to the sale of the hay. As to the privilege of pasturage or lease, it is neces-

sary to refer to the latter contract for the purchase of the hay, only to ascertain the time for such pasturage. A fair construction of the written contracts shows that the plaintiffs were entitled to the pasturage and feed- ing grounds for the cattle during the time it would naturally take for feeding the twenty-five stacks of hay contemplated to be purchased. They were in posses- sion of and had written authority to use the premises for the purpose of feeding their cattle for such length of time and it was unnecessary for them to obtain fur- ther permission. If before the lease expired the de- fendants had compelled plaintiffs to abandon the pas- ture and feeding grounds it would have raised an issue which is not in this case. We have given all the evi- dence and record our most careful attention and adhere to our former opinion. The petition of plaintiffs is therefore denied.                    Rehearing Denied.

Mr. Justice Burnett dissents.