Motion to dismiss appeal denied November 29, 1932; argued at
Pendleton May 2; affirmed May 23, 1933

IN RE RIGHTS TO USE OF WATERS OF OWYHEE RIVER
AND ITS TRIBUTARIES
OLIVER *v.* JORDAN VALLEY LAND &
CATTLE CO. ET AL.
(16 P. (2d) 17, 22 P. (2d) 206)

*Percy A. Cupper,* of Salem, and *Geo. T. Cochran,* of La Grande, for the motion.

*Edwin Snow,* of Boise, Idaho, and *Robt. D. Lytle,* of Vale, opposed.

BEAN, C. J. The respondent John A. Oliver moves to dismiss the appeal herein upon the ground that this court has no jurisdiction and that the necessary parties have not been served with notice of appeal.

After the original proceedings for the determination of the relative rights of various claimants to the use of the waters of the Owyhee river and its tributaries had been appealed to this court and determined and a mandate sent to the circuit court, John A. Oliver applied for a rehearing under the provisions of section 47-618, Oregon Code 1930. Upon a hearing of that application, Oliver was awarded a decree to the right "to divert the waters naturally stored each year in Upper Cow Creek lake below the elevation at which said Upper Cow Creek lake naturally flows into Lower

Cow Creek lake, being an elevation of 2.64 feet above the bottom of the ditch of said applicant, John A. Oliver, as now constructed, * * *".

It is the contention of respondent that all of the water users who were parties to the original proceeding must be served with notice of appeal according to the ruling in *In Re Chewaucan River,* 89 Or. 659, 687, (171 P. 402, 175 P. 421).

The original decree entered in the circuit court for Malheur county on September 21, 1926, awarded John A. Oliver a right to the use of the waters of Cow creek, a tributary, sufficient to irrigate 277.1 acres of land, with a relative date of priority as of March 16, 1907. No appeal was taken from the award to him. Other claimants appealed to the Supreme Court for a review of the determination respecting their water rights. The mandate from this court was entered February 3, 1928.

On February 4, 1928, in his application for a rehearing, Oliver asked that in addition to the waters of Cow creek he be awarded, first, the right to use all of the waters of Upper Cow Creek lake between its normal level and the bottom of the Oliver ditch, to a depth of 2.6 feet; second, a duty of water not to exceed one acre-foot in any thirty days prior to June 1, and not to exceed three-quarter acre-foot per acre, after June 1 of each year, with a total duty each season from April 1 to October 15, not exceeding three acre-feet.

On May 16, 1932, the circuit court passed a decree awarding to the applicant John A. Oliver the right to the use of the stored waters of Upper Cow lake from its natural surface level to the depth of 2.64 feet, and amending the decree of September 21, 1926, and February 3, 1928, to that effect, and denying the application for change in the duty of water. The matter in re-

gard to the duty of water, in view of the fact that Oliver has not appealed, is entirely eliminated from this appeal.

Section 7-503, Oregon Code 1930, regulating appeals, which governs in this matter, provides:

"If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then the party desiring to appeal may cause a notice, signed by himself or attorney, to be served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney,    *    *    *''.

The question for determination in this case is whether or not the parties other than the applicant, John A. Oliver, are adverse parties.

■ An adverse party within the meaning of the statute is any party to the judgment or decree whose interests may be injuriously affected by a modification or reversal upon appeal of the judgment or decree from which the appeal is taken.

Oliver, in the decree appealed from, was awarded additional water rights to those granted him in the original decree. He has not appealed from the last decree and hence his right cannot be increased. He cannot obtain a more favorable decree upon this appeal than was awarded him in the trial court. The only action to be taken by this court upon the appeal, if any change should be made in the decree of the lower court, would be to decrease the right of Oliver to the use of the water mentioned. In so far as we can see from the record that would be beneficial to all the other objectors or water users situated in the river above or below Cow lake. Instead of any change or modification that might be made being likely to affect the rights of the other water users injuriously, it must of necessity be beneficial to them.

It is stated in *Osborn v. Logus,* 28 Or. 302, 304 (37 P. 456, 38 P. 190, 42 P. 997), as follows: "An adverse party is one whose interest in relation to the judgment or decree appealed from is in conflict with the modification or reversal sought by the appeal". Citing The Victorian, 24 Or. 121 (32 P. 1040, 41 Am. St. Rep. 838). This ruling was approved in *In Re Waters of Chewaucan River,* supra, at page 686.

■ Where the only modification possible will be favorable to the one not served or if the situation cannot be made worse for him on appeal, it is not necessary to serve him with notice: *Moody v. Miller,* 24 Or. 179 (33 P. 402); *U. S. National Bank v. Shefler,* 77 Or. 579 (143 P. 51, 152 P. 234).

In *Adams v. Kennard,* 122 Or. 84, 97 (222 P. 1092, 227 P. 738, 253 P. 1048), Justice BURNETT uses this language:

"The canon established by all our precedents and by which it is determined whether a party is adverse to the appellant is in substance this: that if on the appeal, the interests of a party could be adversely affected, he is entitled to notice of the appeal of another party, in default of which this court will not acquire jurisdiction. On the other hand, if the only possible modification of the decree would better his condition, he is not an adverse party and it is not necessary to notify him".

This appeal is quite different from the original decree of adjudication and also from the matter of the application of John A. Oliver for a rehearing. If the decree appealed from had changed the duty of water a different question would have arisen.

■ As it is, the only question, as to whether other parties should have been served with notice of appeal, is, if on this appeal the interests of any of the other

parties could be adversely affected by a reversal or modification of the decree appealed from. From the nature of the case their rights cannot be injuriously affected. No decree would be rendered by this court upon final hearing injuriously affecting the right of any party who has not been served with notice when he is entitled to such notice.

The motion to dismiss is denied.

---

ON THE MERITS
(22 P. (2d) 206)

*Robert D. Lytle,* of Vale, and *Edwin Snow,* of Boise, Idaho, for appellants.

*George T. Cochran,* of La Grande (Cochran & Eberhard, of La Grande, and Percy A. Cupper, of Salem, on the brief), for respondent.

BEAN, J. This is an appeal from a decree of the circuit court rendered upon a rehearing therein, cor-

recting the description of the source from which applicant, John A. Oliver, takes water for irrigation purposes. From a decree making the correction, the Jordan Valley Cattle Company, a corporation, Vincente Mendiola and Nelle B. Parks, water users, appeal.

It appears that on December 31, 1919, a determination of the rights to the use of the waters of the Owyhee river and its tributaries was initiated by a petition, after due notice of times and places fixed for hearing testimony in support of the claims of the various claimants was received. Among the statements and proofs of claim were those of Vincente Mendiola, D. C. Beers, who was the predecessor in interest of the objector, Nelle B. Parks, and Jordan Valley Cattle Company, appellants herein, and John A. Oliver. In those original proceedings the applicant, John A. Oliver, filed his claim with the State Water Board (now the state engineer) claiming the right to the use of the waters of Cow creek, a tributary of Jordan creek, which in turn is a tributary of the Owyhee river. A part of the statement and proof of claim of Oliver, filed with the State Water Board, reads as follows:

"2. Q. Do you claim a right to the above named stream (Owyhee River) or a tributary thereof? If from a tributary, give its name.

"A. Cow Creek, a tributary.   *   *   *"

Among other answers, we find:

"8. Q. State the means of utilizing such water, giving the name by which the ditch is most commonly known, if a ditch is used.

"A. Water is utilized by means of Oliver ditch".

The notice of appropriation which is attached to the statement and proof of claim under which Oliver claims, states: "That we intend to take said water

out of and divert it from said Cow Creek lakes, by means of a ditch," to be constructed, and describes the lands.

The findings and order of the state engineer were filed in conformity to the statement and proof of claim as filed by applicant Oliver. No objections to the order of determination of Oliver's rights by the state engineer were filed. Certain objections were filed by other claimants and heard by the court, and after hearing thereon the circuit court on September 21, 1926, entered its decree awarding Oliver a right as follows:

"Name and postoffice address of appropriator, John A. Oliver, Jordan Valley, Oregon; Date of relative priority, March 16, 1907; Amount cubic feet per second, No amount specified; Number acres, 277.1; Use, Irrigation; Name of ditch, Oliver Ditch; Stream, Cow Creek; Description of land or place of use: (Describing land)".

An appeal was taken by parties other than Oliver to this court. See *In Re Water Rights of Owyhee River,* 124 Or. 44 (259 P. 292). A decree on the mandate was entered February 3, 1928, by the circuit court. On the day following the entry of the mandate in the circuit court, John A. Oliver filed an application for rehearing, stating, in effect, first, that he was entitled to an appropriation with the priority given to the use of the waters naturally stored in Upper Cow Creek lake between the elevation at which Upper Cow Creek lake overflows into Lower Cow Creek lake; second, for a redetermination of the question of duty of water.

In the original proceeding under this application the objector-appellant, Jordan Valley Cattle Company, appearing generally, and Vincente Mendiola and Nelle B. Parks, appearing specially, filed their several motions to dismiss the application for rehear-

ing. On March 6, 1928, the circuit court, presided over by Judge McColloch, made an order denying a rehearing on the question of the duty of water and holding the other questions open until further order of the court. No further action was taken in the cause until December 23, 1930. During the interim Hon. W. W. Wood had been appointed judge of the Ninth Judicial district to fill the vacancy occasioned by the death of the Hon. Dalton Biggs. On December 23, 1930, Oliver filed a motion for change of judges, on account of implied prejudice, which was denied. The cause was set for hearing February 2, 1931. The motion was sustained by the circuit court and Oliver appealed to this court. See *Oliver v. Jordan Valley Land & Cattle Co.,* 137 Or. 243 (1 P. (2d) 1097).

The order and decree of this court returned the cause to the trial court for action on the issues. The circuit court, Hon. C. H. McColloch presiding, on January 11, 1932, entered an order setting the hearing of the application on March 7, 1932, and directing the clerk to forthwith mail notice of hearing to each and every owner and holder of water rights in the Owyhee river and its tributaries, as shown by the findings and decree of the circuit court. Under this order, during the interim, these objectors filed their motion for an order vacating said order of January 11, 1932, for the reason that it was made without notice to these objectors. Such notice is not required by the statutes. The further reason was assigned that at the time the order was made there were undetermined issues of law pending before the court. The motions were denied. The clerk, obeying the order, made his return and proof of service on June 13, 1932, showing the mailing of notice "to each and every owner and holder of water rights in the Owyhee River and its tributaries, as shown by

the findings and decree of the Circuit Court for Malheur County''. The objectors Mendiola and Parks stood on their special appearances and refused to plead further. The objector-appellant, Jordan Valley Cattle Company, within the time allowed by the court, filed its amended objections to the petition, to which a reply was filed, and upon which issues the cause was tried. It was first asserted and claimed that the motions to dismiss, pending when the order made by Judge Wood was appealed from and which was reversed, were not disposed of when Judge McColloch set the matter for hearing. For a second answer and defense the cattle company pleaded that there were other parties to the original adjudication proceedings who had died, no names of their heirs or legal representatives being given, and that there were other parties who had transferred their interests to new parties, who were not given notice by the clerk, and that by reason of such failure the court did not have jurisdiction and the proceedings should abate. The third answer and defense was a former suit wherein appellant John A. Oliver was plaintiff and Gus Azcuenaga et al., predecessors in interest of objector Jordan Valley Cattle Company, were defendants. In that cause the issue of priority of right between these parties was raised and determined adversely to the applicant Oliver, and also raised the issue of the right of the predecssors of the objector to use Upper Cow Creek lake as a reservoir for impounding flood water for supplemental irrigation and the cutting of a channel across the rock outlet of the lake controlled by a proper dam and headgate so that all of the water impounded by this appellant's predecessors could be drawn off, and that these issues were determined adversely to applicant John A. Oliver, and this defense was pleaded as an estoppel.

The physical conditions of this watershed are stated in appellant's brief as follows: "Cow creek flows in a westerly and then in a southerly direction". It arises in the high hills along the eastern boundary of Malheur county, "flowing first in a westerly direction into and through Upper Cow Creek lake". At the outlet of the lake the stream flows southward into Lower Cow Creek lake. When the stream leaves Lower Cow Creek lake it flows through two branches: East Cow creek and West Cow creek. Both of these branches flow toward the south and both branches enter upon the lands of Jordan Valley Cattle Company. After entrance upon the lands of the company the branches join and flow on into Jordan creek, which in turn flows into the Owyhee river. Upper Cow Creek lake is a rather large body of water, and is fed by four streams. The outlet was changed by an intrusion of lava which forced the outlet to a certain point. The entire western or outlet end of the lake was dammed off by the intrusion of lava, the present outlet being the low point in the barrier.

The fourth answer and defense of this objector pleaded affirmatively its permit to store 5,000 acre-feet of flood waters in Upper Cow Creek lake by means of a dam five feet in height across the outlet of the lake at the natural barrier, and pleads a reservoir permit, the ownership of the reservoir site, and that all of such rights are active, subsisting rights.

The cause was heard by the court, and upon the conclusion of the testimony the court made findings of fact detailing the history of the proceedings and ordered and decreed (a) that the motions to dismiss of appellants, and the objections, amended objections and answers of the Jordan Valley Cattle Company should

be overruled and denied; "(b) that the decree be amended so as to describe the source of Oliver's water supply as 'Cow Creek and Upper Cow Creek Lake' ''.

The appellants assign error in the ruling of the court upon the various motions and in the rendition of the decree. Upon the second appeal, involving the application of Oliver for rehearing, in 137 Or., at page 249, in remanding the cause with directions, it was stated that "if upon hearing of the application it appears that the applicant's right to water in Cow Lake are being interfered with by the construction of a channel through the rock barrier in the lower end of the lake, the court should, in the exercise of its continuing jurisdiction, safeguard the use of the water adjudicated to Oliver in the decree". The circuit court also directed that all parties who had rights to the use of the water from the Owyhee river, according to the adjudication, should be given notice of the hearing. This direction was complied with by the clerk; that is, notices were mailed to all parties, as shown by the record in the original adjudication. In order to safeguard the water adjudicated to Oliver in the original decree, according to the directions of the opinion upon the second appeal, it would be necessary for the circuit court to exercise jurisdiction. Therefore, the motions to dismiss and the objections to the jurisdiction of the court were practically disposed of upon the former appeal and no formal ruling thereon was necessary by the circuit court, although they were finally overruled.

Oliver's request for change in the duty of water was disposed of before a rehearing was allowed by the denial of such request in the circuit court from which no appeal or objections were filed. Therefore, that question is not before us. While appellants have a per-

mit to store water in Upper Cow Creek lake it appears from such permit and from the decree of the circuit court in the case of *John A. Oliver v. Azcuenaga Land & Livestock Co. et al.* that appellant's storage right is for artificial storage in Upper Cow Creek lake over and above the natural storage.

The correction of the decree, as prayed for in Oliver's application for rehearing, is, we think, authorized by the statute. The objection raised by appellant to a correction in the decree is not based upon any rights which the appellant has in the natural storage of Upper Cow Creek lake. The objection rests on the claim that through Oliver's use of the natural storage it will require more water to fill up the lake to a point where it will overflow and provide either natural flow or artificial storage for the irrigation of appellant's land.

■ The petition for rehearing is a statutory proceeding based upon section 47-618, Oregon Code 1930. Continuing jurisdiction is invoked by filing a petition for rehearing within the time set by the statute as relating to the subject matter. Unquestionably the petition herein was filed within the time. *Oliver v. Jordan Valley Land & Cattle Co.,* supra. Section 47-618 provides that within six months from the date of the decree of the circuit court determining the rights upon any stream, or if appealed within six months from the date of the decree of the circuit court on the mandate of the Supreme Court, the state engineer, or any party interested, may apply to the circuit court for a rehearing upon grounds to be stated in the application; thereupon, if, in the discretion of the court, it shall appear that there are good grounds for the rehearing, the circuit court, or judge thereof, shall make an order fixing the time and place when such application shall be heard.

The clerk of the circuit court shall, at the expense of the petitioner, forthwith mail written notice of said application to the state engineer and to every party interested and state in such notice the time and place when such application will be heard.

■ It is unquestioned that the decree of the circuit court, on the mandate from the supreme court, is final except as to such matters as may be resubmitted according to the mandate, subject only to the special statutory provisions authorizing the circuit court on certain applications to grant a rehearing. *In re Water Rights of Silvies River,* 122 Or. 47 (257 P. 693).

The appellants challenge the sufficiency of the notices of the application for a rehearing. It is only necessary for us to consider that portion of the application which relates to the decree of the court changing the description of the source from which the Oliver ditch takes water, so as to read, "Stream. Cow Creek and Upper Cow Creek Lake".

■ The application also requested a change in the duty of water. The circuit court denied that part of the application from which no appeal has been taken and that feature of the case is not now before us. Service of notice upon appellants gave the court jurisdiction of appellants. *Woodward v. Baker,* 10 Or. 491.

The appellant challenges the sufficiency of the application made by Oliver. As indicated, it is only necessary to consider whether the application is sufficient for a change in the description referred to. The application recites the findings and order of determination of the state engineer as confirmed and modified by the circuit court, and as affirmed by this court, where Oliver was awarded a date of relative priority of March 16, 1907, for irrigation of 277.1 acres. "Name of ditch,

Oliver Ditch. Stream. Cow Creek''. Then follows a description of the land. In the administration of the decree of adjudication by the water master, some question arose, or might arise, in regard to the source of the Oliver ditch. The Oliver ditch was mentioned in Oliver's statement and proof of claim. It is unquestioned that the intake of this ditch is in that part of Cow Creek otherwise described as Upper Cow Creek lake. As quoted above, the brief of appellants describes Cow creek as flowing into and through Upper Cow Creek lake. It is the contention of counsel for respondent, Oliver, that Upper Cow Creek lake is a part of Cow creek. Be that as it may, such a description of the intake of the Oliver ditch, which he describes in his statement and proof of claim, should be so described that no question would arise in the administration of the decree by the water master. The application shows that Oliver's appropriation is made from the water of Cow creek and Upper Cow Creek lake, that is, the ditch taps Upper Cow Creek lake about 2.64 feet below the lake's surface at that stage of the water when no water will flow out of the lake, and that the applicant, according to the provisions of the original decree of adjudication, is entitled to use the amount of water adjudicated to him from the water naturally stored in the so-called Upper Cow Creek lake between the elevation of the bottom of Oliver's ditch at the point where it taps the lake and the elevation at which Upper Cow Creek lake overflows into Lower Cow Creek lake, and the application proceeds with many details and shows that ever since the completion of the ditch, about 1911, the waters of Upper Cow Creek lake have been used by the applicant as set forth in the report of the state engineer and that the applicant has drawn the water

of Cow Creek lake and carried the same through his ditch, which is about four and one-half miles in length.

The order of determination of the state engineer, as affirmed by the court, provides as to the duty of water taken from the tributaries of Owyhee river, of which Cow creek is one, as follows:

"The amount of water diverted from tributaries of Owyhee River for irrigation purposes shall not exceed three-fourths acre foot per acre during any calendar month prior to June 1st, and one-half acre foot per acre during any calendar month after June 1st, of each year; and the total quantity diverted during the irrigation season from April 1 to July 15 shall not exceed two and one-half acre feet per acre.

"That the rate of flow or head of water diverted for any lands shall not exceed one-fortieth of a cubic foot per second per acre (one inch per acre) prior to June 1st, and one-eighth of a cubic foot per second per acre (one-half inch per acre) after June 1st, of each year, except where rotation is practiced as herein provided".

It will, therefore, be seen that the water right awarded to Oliver, according to the corrected description by the circuit court, to be taken from the water naturally stored in Upper Cow Creek lake between the elevation of the bottom of the Oliver ditch, at the point where it taps the lake, and the elevation at which Upper Cow Creek lake ceases to overflow, is limited by the provision in regard to the duty of water, as provided in the original decree. The application, so far as it relates to a change of the description of the intake of the Oliver ditch, does not request, and the allowance thereof would not permit, the use by Oliver of one inch or any quantity of water more than was awarded to him by the original decree. If we term Upper Cow Creek lake as not being a part of Cow creek and allow

no water to be used through the Oliver ditch, which was mentioned in the statement and proof of claim, for the reason that the decree described the source as Cow creek, then Oliver would be in much the same position as the girl who asked her mother's permission to go in swimming, and was answered "Yes, my darling daughter, hang your clothes on a hickory limb, but don't go near the water".

■■ We think the application for the correction is sufficient. It is not, strictly speaking, a regular rehearing such as would be required where a change in the duty of water, or the amount of water to be used by the applicant, or any substantial change, is requested, which would materially affect other water users. As indicated in the able brief of counsel for appellants, water adjudications initially determined by the state engineer, confirmed by the circuit court, often appealed to the Supreme Court, necessarily consume considerable time, and there may be other reasons for an interested party to apply for a rehearing. As to what would be necessary, where a material change is sought, affecting different water users from the stream, we need not consider. Suffice it to say that we believe one of the reasons for the statute is to correct descriptions of ditches, streams, lands or clerical errors occurring by an oversight or vagueness of expression, which apparently was the reason for the applicant giving a somewhat meager description of the source of his water supply in his original statement and proof.

■ It is urged by appellants that, where parties have died since the rendition of the original decree and where there has been a change in ownership of the lands and water rights embraced in such decree, the representatives of the deceased parties and the gran-

tees of the original parties were not notified. It does not appear to us from the record herein that there is any interested party who was not served with notice or any party who has not appeared in the proceeding who could possibly be injured in any way by the correction mentioned. We do not think it is incumbent upon the applicant to suggest substitutions for the parties to the original decree of adjudication who have since died. Where there has been a change in the ownership of lands and rights, it is not essential that there be a substitution. When such changes occur during the proceedings of adjudication, as a matter of convenience, the name of the successor to the original claimant is sometimes mentioned in the tabulation. *In Re Water Rights of Willow Creek,* 119 Or. 155 (236 P. 487, 763, 237 P. 682, 239 P. 123).

■ Azcuenaga Land & Livestock Company, to whose rights the Jordan Valley Cattle Company succeeded, obtained a permit from the state engineer dated February 10, 1917, for the artificial storage of five thousand acre-feet of water in Upper Cow Creek lake, as stated in the application "subject to existing right". As we understand the record, this does not include water naturally stored in Upper Cow Creek lake. The application recognizes the Oliver ditch in a proposition to enlarge and use the same, if necessary. We do not find from the record that the correction in the decree will in any way interfere with the rights of the successor to the Azcuenaga Land & Livestock Company, as to storing water in Upper Cow Creek lake. It may be necessary in order for them to exercise the rights given by the permit without interfering with prior rights to construct devices so as to measure and regulate the water taken from Upper Cow Creek lake. The

appellants, as to the artificial storage in Cow Creek lake, are subsequent appropriators. The burden, therefore, should be upon them to construct necessary devices in order to properly divide the water, at their own expense. *Salt Lake City v. Gardner*, 39 Utah 30 (114 P. 147).

We have carefully examined the record and decree in the case of *Oliver v. Azcuenaga Land & Livestock Company*, wherein Oliver sought to enjoin them from cutting a channel to the depth of about one and one-half feet leading from Upper Cow Creek lake through the reef of rock but find no conflict between such decree and the decree in the original adjudication proceeding declaring Oliver's rights, or any conflict with the decree making the correction. A decree is conclusive only in respect of matters necessarily inconsistent with it. *Stillwell v. Hill*, 87 Or. 112, 119 (169 P. 1174). Under that decree and under the adjudication decree as corrected by the circuit court in the present proceeding, Oliver is entitled to the water naturally stored in the so-called Upper Cow Creek lake to the extent of the amount awarded to him, and the appellants are entitled to the water artificially stored in their reservoir.

It was found that the Jordan Valley Cattle Company, upon the completion of the work, "will be decreed the right for the storage waters in said above described reservoir in an amount not to exceed 5,000 acre-feet and will be granted the right to appropriate the same under said permits with a priority date of said storage and such appropriation of December 14, 1916". There appears to be but little danger of a conflict in Oliver's right of 1907 and one of December 14, 1916. The court found that there was no evidence which established the

fact that the cutting of said channel through said natural barrier across Upper Cow Creek lake would deprive plaintiff (Oliver) of any irrigation water to which it may be found that he is entitled to use and no evidence of injury to plaintiff, and dismissed the complaint.

The decree determining the water rights of the respective parties should be definite and certain as to the parties and their rights. Otherwise it would leave the controversy between the water users unsettled and unadjudicated and their respective rights undetermined and subject to further litigation. 3 Kinney on Irrigation and Water Rights, 2811, § 1557. Where a decree is obscure, like the original decree involved, reference may be had to the pleadings, evidence and entire record in the case. In the present case the statement and proof of claim takes the place of the pleadings and a part of the evidence. *Wright v. Phillips,* 127 Or. 420 (272 P. 554). The decree adjudicating these water rights should be within the allegations and statements of proofs of claim and responsive to the issues therein presented. *Haney v. Neace-Stark Co.,* 109 Or. 93, 110 (216 P. 757, 219 P. 190).

Appellants complain that the notices were not mailed ''forthwith'' as required by section 47-618. The time consumed was caused by the court, on account of a change in judges and other reasons, and after a rehearing was allowed by Judge McColloch the claimant acted promptly in sending out notices. The notices were sent by direction of the circuit court, in harmony with the opinion of this court in *Oliver v. Jordan Valley Cattle Company,* supra.

A strict rule of pleading does not apply to suits or proceedings adjudicating water rights. *Hough*

*v. Porter,* 51 Or. 318 (95 P. 732, 98 P. 1083); *In Re Water Rights of Silvies River,* supra. Neither should a strict rule be applied as to the language in an application for rehearing for the purpose of making a correction of a decree.

Appellants complain that the circuit court erred in a reference to water rights of the Jordan Valley Cattle Company from the waters naturally flowing in Cow creek by stating "that said appropriation of said water naturally flowing in Cow creek does not include any of the water naturally stored in Upper Cow Creek lake". The brief goes on to state that "(a) Upper Cow Creek lake is merely a 'swelling' of Cow creek and a part of the stream; (b) The waters naturally stored in Upper Cow Creek lake are the very basis and foundation of the water supply for the lands of appellant, Jordan Valley Cattle Company".

The appellants argue that the applicant Oliver gets his water supply at the outlet of Upper Cow Creek lake. The Jordan Valley Cattle Company ranches are situated just below the lower lake and receive their water supply mentioned above from the channels of East Cow creek and West Cow creek. The original decree herein awarded to the appellant, Jordan Valley Cattle Company, water rights in East Cow creek and adjacent springs and other rights giving the date of priority.

We pause here to say that there is no provision or inclination manifested in the present proceeding to disturb the rights adjudicated to the cattle company by the original decree.

It is contended by these appellants that when, during any irrigation season, water first ceases to flow over the lava reef barrier at the upper lake, since the

water is approximately at the level of the barrier, then obviously any rain, cloudburst, or rise in temperature would cause resumption of the flow of Cow creek to reach the lower prior users. But artificial diversion at the upper lake at that time would entirely prevent the resumption of flow if it once even momentarily ceased, and that the adverse effect of the upper junior diversion is direct and immediate and differs in no-wise from any upper junior diversion in any ordinary stream. This objection, in effect, is to the decree in the original adjudication awarding Oliver his water right. This evidently, from the record, was known by the appellants at that time and if there had been any objections to the decree awarded to Oliver, to take certain quantity of water through his ditch to his lands, they should have been made at that time.

In our opinion, this question, which is a very nice one for an engineer, involving seepage, storage and other questions ably argued in the brief of appellant, is foreclosed by the original decree of adjudication.

It is plain from the record that Oliver's right to the use of stored water has at various times been admitted by Jordan Valley Cattle Company. His right to the use of the natural storage in Upper Cow Creek lake was recognized by the court in the case pleaded by appellants of *Oliver v. Azcuenaga Land & Livestock Co. et al.*, supra. While there may be some slight effect upon the flow of water in Cow creek by virtue of the use by Oliver as adjudicated to him, we think the same might be said of any junior appropriator on a stream above a prior appropriator.

This matter is all regulated, we believe, as near as it is possible by the general plan under the code awarding certain quantities of water and dates of relative

priority to the various water users. It would seem that the artificial storage of water in Upper Cow Creek lake "in the natural bed at high water" as applied for by appellant would relegate the question here contended for to insignificance. Oliver's application does not seek to prevent the construction of storage works by drawing off this artificially stored water. It is conceded that Oliver is entitled to the use of the waters naturally stored in Upper Cow Creek lake for 277.1 acres, with a priority date of March 16, 1907, which is prior to the rights under the permits, Nos. 347 and 391. Oliver's award is limited, as above suggested, by the duty of water as provided in the original decree.

We think that with the correction in the decree as provided in the present proceeding by the circuit court, and without in any way vacating, annulling, or changing the original decree of adjudication or affecting the rights of other parties as therein adjudicated, the decree can be so administered by the water master that Oliver's rights may be enforced and the artificial storage in Cow Creek lake can be utilized. As suggested, it may require the assistance of a competent engineer and measuring devices.

In case it becomes necessary for measurements so as to allot to Oliver the amount adjudicated to him and regulate the use of water artificially stored in Cow Creek lake, the circuit court is hereby authorized to order such proceedings as may be necessary to assist the water master in the distribution of the waters involved.

The decree of the circuit court is affirmed.

ROSSMAN, CAMPBELL, and BAILEY, JJ., concur.