# REPORTS OF CASES

## DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1860.

---

## WEAVER *et al. v.* EUREKA LAKE COMPANY.

WHETHER plaintiffs, who had posted notices claiming the water of a certain river, and stating their intention to construct a ditch or flume, and appropriate the water for mining purposes, began their surveys, etc., and prosecuted their work to completion with due diligence, as against parties attempting subsequently to appropriate the water, is a question for the jury, and their verdict, on conflicting testimony, will be conclusive.

Suit by plaintiffs as prior appropriators of the water of Middle Yuba river, for damming up and diverting the water of three lakes situated one above the other, opening into each other, and discharging their water into the Middle Yuba river through the same channel, which is about a mile long, and is called "lake stream." The quantity of water varies with the seasons. Sometimes the stream is a torrent, and sometimes it is almost or quite dry. Defendants, to create a supply for their ditch during the summer, erected a dam at the outlet of each lake, converting it into a sort of reservoir, from which the water was drawn as needed, contending that the circumstances justified the erection of the dams, and that the great value of the lakes as reservoirs justified the injuries resulting to plaintiffs. *Held*, that there is no law for such position, that if the injuries to plaintiffs were trivial, they would be *damnum absque injuria*, but that the legal superiority of conflicting rights cannot be determined by a comparison of their value.

To render valid a claim of water by appropriation, the claim must be for some useful or beneficial purpose, or in contemplation of a future appropriation for such purpose by the parties claiming it. A claim for mere speculation will not answer.

APPEAL from the Fourteenth District.

To the facts stated in the opinion of the Court, it may be well to add, that defendant showed that one Sisson placed a notice at the outlet of the main lake, about July, 1853, claiming the water of the lakes. These notices were signed " Sisson & Co." and were placed at different points. Sisson never took any steps toward the construction of a ditch, or the appropriation of the water : made no survey and placed no stakes. Sisson made one Reed an equal partner and owner with himself, and in June, 1854, sold his share, one-half to Irwin, one of the stockholders in the Eureka Lake Co.—the defendant. In July, 1854, one La Du and others associated with him, commenced the survey, of a ditch from the " lake stream," above plaintiffs' flume, to Eureka, the intended terminus of plaintiffs' flume. In the fall of the same year, and in 1855, they built dams across the stream, near the outlet of the lake. The object of the dam is to retain the water of the lakes, to be drawn off at pleasure and used in defendant's ditch which taps the stream below the dam, and above plaintiffs' flume.

The three lakes are situated off to one side of the south fork of the Middle Yuba, at an angle of about forty-five degrees, and about a half mile distant from the point where plaintiffs' flume taps the south fork. As the flume was originally designed, it would have struck the south fork below its junction with " lake stream," and have received the water of both streams at the same head. But, for more grade, or for some convenience or advantage of construction, it was found better that the head should be a little higher on the south fork, and just above its junction with the " lake stream." The result was that the flume was carried high above and across " lake stream " on the route to the south fork, and the water of the stream was conveyed to the main flume by a small side flume. As soon as plaintiffs were prepared to receive the waters of " lake stream," they turned it into their flume. The defendants turned it out again, and run it off in their ditch which was situated on the same stream above. Defendant continued to divert the water, and plaintiffs brought suit.

It is unnecessary to set out the instructions to the jury, as they were

plain and simple propositions, and, when applied to the case in hand, amounted to no more than this: that a bare claim to a water right without some actual steps towards appropriation, could confer no rights capable of ownership or sale.

Verdict for plaintiff, with $3,000 damages. Judgment accordingly. Defendant appeals.

*Henry Meredith*, for Appellant.

*Mc Connell & Niles*, for Respondents.

COPE, J. delivered the opinion of the Court—FIELD, C. J. and BALDWIN, J. concurring.

This is an action to recover damages for damming up and diverting the water of certain lakes in Nevada county. The complaint is in the usual form in such cases, alleging a right by appropriation in the plaintiffs, and an improper interference with that right by the defendants. The averments of the complaint are controverted by the answer, and a prior and superior right asserted in the defendants. It can hardly be expected that we will undertake the task of a critical examination of the testimony for the purpose of determining whether, upon the weight of the evidence, the verdict was right or wrong. We have so frequently declared the rule upon this subject, it is unnecessary to repeat it again. It is contended, however, that there was no conflict of testimony upon the question of the priority of the rights of the parties, and that upon this point the verdict is entirely unsupported by evidence. If this be true, it, of course, disposes of the case.

Both parties claim the water for mining purposes, and the right of each is based upon the construction of a ditch by means of which it is alleged that the appropriation was effected. It was shown that the plaintiffs, sometime in June, 1853, posted certain notices claiming the water of the Middle Yuba river and its tributaries, and stating their intention to construct a ditch, or flume, and appropriate the same for the purposes mentioned. It was further shown that, in the following month, they commenced their surveys on the contemplated line of the ditch, and that these surveys were, in due course of time, prosecuted to completion, and followed up by the actual construction of the work. It is claimed that the plaintiffs did not prosecute their enterprise with sufficient diligence, and that their rights do not, therefore, date by rela-

tion from the commencement of their operations in 1853; but the question of diligence was necessarily passed upon by the jury, and their verdict is conclusive. It is not pretended that the defendants did any act towards the construction of their ditch until the summer of 1854, but evidence was introduced for the purpose of connecting them with a right to the water of the lakes in question, claimed by other parties, who had put up notices of their appropriation early in July, 1853. Irrespective of any question as to the validity of this claim, we think the conclusion of the jury fully justified by, and in strict conformity with, the evidence. The notices of the plaintiffs claiming the same water, were as valid and effectual as the notices of these parties could have been, and the proof is that they were first posted.

It is proper, in this connection, to notice another question, which is discussed at some length in the briefs of counsel. There are three lakes, the water of which constitutes the subject of this controversy. They are situated one above the other, and discharge their water into the Middle Yuba river through the same channel. This channel is about one mile in length, and is called "lake stream." The quantity of water discharged varies with the seasons. Sometimes the stream is a torrent, and at others, it is almost or quite dry. The defendants, for the purpose of creating a supply of water for their ditch during the summer months, erected a dam at the outlet of each of these lakes, by which means it was converted into a sort of reservoir, from which the water was drawn as their necessities required. It is contended that, under the circumstances, the erection of these dams was justifiable and proper, and that the great value of the lakes as reservoirs is a sufficient justification for injuries resulting to the plaintiffs. We are aware of no principle of law upon which such a position can be maintained. If the injuries to the plaintiffs were of a trivial character, they should, perhaps, be considered *damnum absque injuria;* but a comparison of the value of conflicting rights, would be a novel mode of determining their legal superiority.

The question whether the defendants had a right to turn into the lake water obtained from another source, and take out the quantity thus turned in, does not properly arise in the case; for it does not appear with sufficient certainty that any water was so turned in by them during the period in which damages are alleged to have accrued.

We see no error in the instructions of the Court. Those to which objections are principally urged, relate to the validity of the claim to

the water of the lakes purchased by the defendants. The evidence in relation to this claim is perfectly plain and uncontradictory, and, we think, shows conclusively that the claim was invalid, and without the semblance of law to support it. The water was not claimed for any useful or beneficial purpose, or in contemplation of a future appropriation for any such purpose, by the parties claiming it. It was a bare claim; for no other object, that we can discover, than that of speculation. The Court would have been justified in instructing the jury to disregard it entirely.

Judgment affirmed.