TAUGHENBAUGH ET AL. v. CLARK ET AL.

1. WATER RIGHTS.

To constitute a legal appropriation of water, it must be applied within a reasonable time to some beneficial use. The diversion ripens into a valid appropriation only when water is utilized by the consumer.

2. SAME.

What shall constitute a reasonable time within which water must be applied to a beneficial use is a question of fact depending upon the circumstances connected with each particular case.

3. SAME.

There may be priority of right to the use of water as between consumers from the same ditch.

*Appeal from the District Court of Garfield County.*

THIS was a proceeding by petition in the district court by appellants, the owners of the irrigating ditch, to reform the decree of the district court in declaring priorities and quantities to which different ditches were entitled, made in May, 1888, and for a readjustment of water rights and redistribution of the water in the district. The ditch of appellants took water from Beaver Creek. The defendants were proprietors of or interested in other ditches taking water from the same stream. In the original hearing and decree fixing the rights of each, Mr. Taylor (attorney for appellants) was appointed referee, under the statute, and proceeded to hear and determine the respective rights of different parties.

He found the ditch of appellants (numbered 24) contemplated appropriating water to the extent of 90 cubic feet per minute, July 28, 1885. First enlargement, March 3, 1887, increasing its capacity and water appropriated to 510 cubic feet per minute. The ditch of J. A. Clark (No. 27) to date from September 5, 1885, with 120 cubic feet of water per minute. The Smith ditch (No. 47) to date from November 20, 1886, with 70 cubic feet of water per minute. The Smith & Neve ditch (No. 48) to date February 26, 1887, with 300 cubic feet of water per minute.

The following special findings in regard to the respective ditches became important in determining the rights of the different ditches, and so much of each as is deemed necessary are copied *in extenso :*

Ditch of appellants : " Work was commenced on or about July 28, 1885. Considerable work was done thereon during that season, and it was completed during the spring of 1886, and during that season about 20 acres of land was irrigated thereunder. The capacity of said ditch as originally built was about 90 cubic feet of water per minute of time, the

dimensions thereof being from 8 to 10 inches deep, from 12 to 15 inches wide on bottom, with grade ⅜ inch to the rod, to which amount of water priority dates from July 28, 1885. That on or about March 3, 1887, the first enlargement thereon was commenced, whereby the dimensions of said ditch were increased to 2½ feet wide on bottom, slope of banks one to one, depth of water flow 18 inches, grade remaining the same as before ; and the computed capacity was thereby increased 510 additional cubic feet of water per minute, to which amount of water priority dates from said March 3, 1887 ; that in 1887 was irrigated under said ditch about 65 acres. There are under said ditch about 740 acres practicably irrigable lands. The entire amount of water appropriated by said ditch at present time is 600 cubic feet per minute. That the construction, enlargement and uses of the waters thereby appropriated have been pursued with reasonable diligence."

The special finding in regard to the J. A. Clark ditch and Smith ditch are not given.

Those relating to the Smith & Neve ditch are as follows : " Work was commenced on said ditch on or about the 26th day of February, A. D. 1887, and was completed during that year. The dimensions of said ditch are estimated at 2½ feet on bottom ; slope of banks one to one ; depth of water flow 1 foot ; grade 6 inches to the 100 feet ; capacity computed at 100 cubic feet of water per minute, to which amount priority dates from said time. The work of constructing said ditch has, under the circumstances of this case, been pursued with reasonable diligence. There are about 25 acres of feasible irrigable lands under said ditch."

The findings of the referee appear to have been adopted by the district court, and the decrees of that court in regard to the rights of appellants' ditch and those of the Smith & Neve ditch (between which the principal controversy seems to exist) were as follows :

Appellants' ditch : " And it is hereby adjudged and decreed that there be allowed to flow into said ditch from said creek,

for the use aforesaid, and for the benefit of the parties lawfully entitled thereto, under and by virtue of the appropriation by original construction priority No. 34, so much water as will flow into said ditch, it being estimated at from 12 to 15 inches wide on bottom, slope of banks one to one, depth of water flow 8 to 10 inches, with grade of $\frac{3}{8}$ inch to the rod, computed at 90 cubic feet of water per minute of time. And that there be further allowed to flow into said ditch as aforesaid, for the use and benefit aforesaid, under and by virtue of the appropriation by first enlargement priority No. 66, so much additional water as will flow in said ditch from said creek, it being estimated at $2\frac{1}{2}$ feet wide on bottom, depth of water flow 18 inches, slope of banks and grade remaining the same, computed at 510 cubic feet of water per minute. The whole amount of water to which the ditch is at present entitled is 600 feet per minute of time.

"Provided, that 520 cubic feet of water per minute of said appropriation shall only be granted and allowed to flow into said ditch from said creek for the use and benefit aforesaid in proportion as said parties shall increase their feasibly irrigable lands thereunder over and above the amount of 65 acres in the ratio of 60 cubic feet of water per minute to 50 acres of such additional lands.

"And provided further, that said increase of said additional lands, and the user of the said proportionate additional amounts of water appropriated therefor thereon, be made by said parties with reasonable diligence."

The Smith & Neve ditch: "That said ditch is entitled to priority No. 65. * * * And is hereby adjudged and decreed that there be allowed to flow into said ditch from said creek, for the use aforesaid, and for the benefit of the parties lawfully entitled thereto, under and by virtue of the appropriation by original construction priority No. 60, 300 cubic feet of water per minute.

"Provided, that all of said appropriation shall only be granted and allowed to flow into said ditch from said creek, for the use and benefit aforesaid, in proportion as said parties

shall bring under practicable cultivation and increase their feasibly irrigable lands thereunder, in the ratio of 60 cubic feet of water per minute to 50 acres of such additional land.

"And provided further, that said increase of such additional lands, and the user of the said proportionate additional amount of water appropriated therefor thereon, be made by said parties with reasonable diligence."

The allegations in the petition are, in effect, that the original finding of the referee and the decree of the court based upon it were erroneous, in that it only allowed petitioners 90 cubic feet of water per minute in priority of appropriation and date of July, 1885, and that the amount going to make up the 528 cubic feet per minute was decreed as of the date of March 3, 1887, when it should have been made as of the earliest date (July, 1885); also that the date of March, 1887, was erroneously given and decreed as the date of the first enlargement of appellants' ditch, when it should have been of June 7, 1886. That by decree the Smith & Neve ditch was given priority No. 65 as of February 26, 1887, when it should have been of October 13, 1887. That the Smith ditch, which was given priority No. 63, of the date of November 20, 1886, with 70 cubic feet of water per minute, had not sufficient irrigable land under it to warrant an appropriation of over 20 cubic feet per minute; that such ditch had been but very little used by the owner, and was practically abandoned.

The respondents George A. Clark and Josephene A. Clark filed an answer denying the material allegations in the petition, and setting up affirmatively that petitioners' ditch, by its original appropriation and priority No. 34, as shown by the evidence taken before the referee, was not entitled to 90 cubic feet of water per minute, or to more than 24 cubic feet of water.

There is no allegation in the petition charging any irregularity in the decree as far as the Clark ditch is concerned. Yet the owners of that are the only respondents and contestants, as shown by the pleadings. All that occurs in the

petition is : " That the parties interested adversely to this application are (naming the owners of appellants' ditch and the Smith ditch and the owners of the J. A. Clark ditch)."

Much testimony was heard upon the trial pertaining to each of the ditches. The court found and decreed :

*First*—That neither the petitioners nor respondents were entitled to have the former decree (May 5, 1888) in reference to appellants' (the Taughenbaugh) ditch modified, changed or altered in any respect.

*Second*—That the decree giving the Smith ditch 70 cubic feet of water per minute be modified, reducing the amount to 50 cubic feet per minute.

*Third*—That the original appropriation of the Smith & Neve ditch of 300 cubic feet per minute as of February 26, 1887, be reduced to 150 cubic feet, and that the remaining 150 feet per minute date from the enlargement of the ditch from October 13, 1887.

A motion for a new hearing was denied and appeal taken from the decree.

Mr. EDWARD T. TAYLOR, for appellants.

Mr. JOHN T. SHUMATE and Mr. H. T. SALE, for appellees.

REED, P. J., delivered the opinion of the court.

The controversy in this case arose, as in many others all over the state, in claiming and decreeing a much greater quantity of water than the supply stream furnished. In nearly all decrees for water rights and the distribution of water, no account was taken of the supply from which the water was to be drawn. Beaver Creek, from which all the conflicting ditches were to be supplied, was of limited capacity, and the water allotted to either ditch would have exhausted it.

There was very little conflict in the testimony. Most of it was directed to ditch of appellants in an attempt to show

that by virtue of its construction and appropriation of water it was entitled to a greater amount as its first priority of July 28, 1885, which was decreed to be 90 cubic feet per minute. The second appropriation by enlargement, of the date of March 3, 1887, was 420 cubic feet per minute, making the aggregate 510 cubic feet. The contention was not that the proprietors were entitled to more than the aggregate quantity, but that they were entitled to the full quantity under the first priority of July 28, 1885. The testimony in regard to the Smith & Neve ditch and the Smith ditch was very meager, and while, perhaps, sufficient to establish the date of commencement of construction, was hardly sufficient to establish the date of application of the water to the land, and the quantity the ditches carried;—while in the Clark ditch there was no testimony. It appears to have been established by the evidence, and practically conceded, that appellants were the first to appropriate and apply the water of the stream.

The finding of the court as to the facts, under the well settled rule of this court, will not be reviewed. It appears to have been fully warranted by the evidence. The only question is whether, under the constitution, statutes, and state decisions, the court properly applied the law to the facts as found.

Appellants commenced construction at a point too far down stream to get the necessary fall. The ground was flat, and, by its loose, open and rocky character, unfit to carry water. A small quantity was carried through it. For the first 1,200 feet the ditch was small and inadequate. From that point down it was dug larger, and by reason of greater fall was capable of carrying a large quantity, if not the entire volume claimed. Early in the spring of 1886 water was taken through the ditch, about 20 acres under it planted in crops and irrigated. Work was done upon the ditch in the summer and fall, and perhaps winter of 1886. In the spring of 1887 the head of the ditch was moved up the stream about 400 feet, to obtain necessary fall, a new ditch dug, about

1,200 or 1,400 feet long, intersecting and discharging into the original ditch. During the year 1887 three of the owners used water from the ditch, irrigating land variously estimated by different witnesses from 45 to 47 acres. In the interim, and before the change was made in the head and alignment of the ditch, the water rights of the Clark ditch (September 5, 1885), the Smith ditch (November 20, 1886), and Smith & Neve ditch (February 26, 1887), attached.

In determining the amount of water appropriated by appellants we are not aided, but confused, by the declaration of the parties. It was not executed and verified until March 2, 1888, and is so at variance with the testimony of the same party, and the facts as established, that it is worse than none. It is said: "The date of the appropriation of water by the original construction of said ditch is the 28th day of July, 1885, and the amount of water claimed by and under such construction is *thirty cubic feet per second of time.*"

The date of appropriation by enlargement of said ditch is of March, 1887, and the amount of water claimed by and under such enlargement is *twenty cubic feet per second of time,* and the capacity of the ditch at that date (1888) was stated to be 30 cubic feet per second, making the first appropriation and priority 1,800 cubic feet of water per minute, and by enlargement 1,200 cubic feet per minute, aggregating 3,000 cubic feet, when all that was attempted in proof was from July 28, 1885, to March 3, 1887, 90 cubic feet per minute, with no ditch capacity for carrying it, and after the last date 510 cubic feet per minute.

Upon the trial much testimony was taken in regard to the *intention* of the parties at the time of the first appropriation. Such intention, unless established by notice, or in some other public manner, could in no way be known to or control others wishing to take water from the same stream, and such intention could only be inferred or deduced, *first,* from the capacity of the ditch at its head, and perhaps, *second,* the amount of irrigable land of the ditch proprietors upon which it could reasonably be supposed that they intended to apply it.

By the testimony it was shown that at the time of the alleged appropriation in July, 1885, the only parties in interest and who had land to be covered by the ditch were George W. Taughenbaugh, John F. Taughenbaugh, and House. In the fall of that year W. A. Taughenbaugh located a claim. In the spring of 1886 F. M. Taughenbaugh located a claim. Elrod bought the claim of W. A. Taughenbaugh in the fall of 1887. At what time F. M. Taughenbaugh located his claim is not stated, but presumably in 1886, as we first hear of him as working on the ditch in that year. George W. Taughenbaugh testified: "Elrod bought in the ditch in the fall of 1887. He bought of W. A. Taughenbaugh, *who came in like my father, by enlargement right.*" He also testified that J. A. Taughenbaugh, House and himself were the original owners; consequently the original appropriation could only have been for the irrigable land of those three, as it is expressly stated that the others came in under the enlargement, which was not made until the spring of 1887. Taking these facts, the *intention* of these parties at the time of the first appropriation and application cannot be extended so as to include parties who had neither interests in the ditch nor land upon which to apply water.

That the later parties did not consider themselves entitled to any rights under the original appropriation, and also realized the inadequacy of the appropriation and the ditch as designed and excavated, is evidenced by the fact of the change and enlargement of the ditch in the spring of 1887. The court was warranted, under the law, in finding the original appropriation to have been only for the three claims, and the amount of water applied, previous to the spring of 1887, quite limited, both by the faulty construction of the ditch and the small number of acres upon which water was to be applied, and that it could not have exceeded, if it equaled, the claim of 90 feet per minute.

The court was also warranted in finding that respondent's rights by appropriation antedated the appropriation of the

later claimants, and that their rights had attached before an effort was made to enlarge the ditch and take the water.

The inequitable character of the claim that all present owners in the ditch should be decreed to have rights relating back to the date of the first appropriation and cutting out intervening appropriators becomes apparent.

I shall not attempt to determine the question whether the undertaking by the three original proprietors was prosecuted with diligence and completed within a reasonable time. All authorities agree that both are conditions precedent to the right to the use of water.

" Appropriation is the *intent* to take, accompanied by some open, physical demonstration of the *intent* and for some valuable use." *Larimer County Res. Co. v. People*, 8 Colo. 616 ; *Thomas v. Guiraud*, 6 Colo. 533 ; *Farmers' Canal Co. v. Southworth*, 13 Colo. 114 ; *McDonald v. Bear River Co.*, 13 Cal. 220.

" To constitute a legal appropriation, the water must be applied within *a reasonable* time to some beneficial use ; that is, the diversion ripens into a valid appropriation only when the water is utilized by the consumer." *Platte Water Co. v. Irrigation Co.*, 12 Colo. 531 ; *Farmers' Canal Co. v. Southworth*, 13 Colo. 115.

It was wisely and humanely said in *Sieber v. Frink*, 7 Colo. 154 : " What shall constitute such reasonable time is a question of fact depending upon the circumstances connected with each particular case." Men of limited means, pioneers in a new territory, who have not only to " grub " and clear land, but erect houses, and provide means of living while making a home, should not be held to the same rule with those more favored and having abundant capital. As long as the settler in the desert does not abandon, but continues in good faith to prosecute his construction of a ditch and the application of water to his land as rapidly as his means and circumstances will permit, he should be held to be within the limit of a " *reasonable time ;* " nor should his incipient construction and application of water be held as the extent of the

appropriation. When land requires clearing and grubbing to prepare it for cultivation, the law should not and does not require a man to apply water to 160 acres where he can only cultivate 10 acres. Hence the wisdom of statutory provisions requiring a claimant of water to file a plat and statement as public notice of intention and the extent of the right claimed. The diligent and enterprising pioneer who attempts to wrest a home from the arid desert should secure water rights adequate to his wants.

In this instance no plat or declaration of intention appears to have been filed as a notice to others, but as no question is raised in regard to it, it must be considered as waived.

Cross errors were filed by appellees, but the questions presented were those of fact, and seem to have been properly disposed of by the court.

It cannot be said that the original allotment of 90 cubic feet of water to the three original claimants was excessive in quantity or insufficient for the three farms. If the appropriation of the other ditches was excessive, the court very properly reduced them. If the water in appellants' ditch was not sufficient for all owners, the three original proprietors are entitled to priority in the distribution of the water, and the later comers must take as of the date of their appropriation, and suffer the consequences of delay as in all other cases where there is not an adequate supply of water. By reducing the volume of water allowed respondents' ditches, the ditch of appellants will practically get all the water to which it is entitled. The decree appears to have been just and equitable, and will be affirmed.

*Affirmed.*