Argued April 2, modified June 3, 1924.

# E. E. BLANCHARD *v*. J. T. HARTLEY.

(226 Pac. 436.)

**Waters and Watercourses—Difference Between Original and Recorded Notice of Appropriation Held Immaterial.**

1. Whether original notice of water appropriator claimed more water than did recorded notice *held* immaterial as respects rights of his successors in interest as against subsequent claimant, material question being whether original appropriator and successors appropriated quantity claimed by latter.

**Waters and Watercourses—Statement in Notice of Appropriation as to Use of Water for Milling Purposes Held Immaterial.**

2. That notice of appropriation of water stated that it was to be used for milling purposes *held* immaterial as respects rights of subsequent claimant, where he set up claim some 10 years after last use of water for such purposes and water so used was taken from another ditch than that described and from opposite side of stream.

**Waters and Watercourses—Evidence Held to Show Ditch was not Enlarged by Original Appropriator's Successors.**

3. In suit involving water rights as between original appropriator's successors in interest and subsequent claimant, evidence *held* to show that ditch was not enlarged by such successors after death of original appropriator.

**Waters and Watercourses—State Engineer's Award of Water Rights Held More Equitable.**

4. State engineer's award of .79 second-feet of water to original appropriator's successor in interest as first right for use of 47 acres and .65 second-feet as second right for 39 acres to another *held* more nearly correct and equitable under evidence than

Circuit Court's decree awarding such successor first right to sufficient water to irrigate 15 acres and third right to irrigate 32 acres.

**Waters and Watercourses—Acreage Included in Right to Water for Irrigation.**

5. One awarded second right to water for irrigation of 39 acres in southeast quarter of quarter-section *held* entitled to apply part of water awarded to small portion of such tract under irrigation from same ditch in southwest quarter.

From Jackson: F. M. CALKINS, Judge.

Department 1.

This suit arose out of the adjudication of the relative rights to the use of the waters of Rogue River and its tributaries. The contest between the appellant E. E. Blanchard and the respondent J. T. Hartley involves the west fork of Williams Creek. Blanchard is the successor in interest of Mathias Chapman, who appropriated water from the west fork of Williams Creek in 1875 by digging a ditch and conducting the water from that ditch to his homestead entered and described as the northwest quarter of section 3, township 39 south, range 5 west of the Willamette meridian. The ditch was dug and the water first applied in 1876. No question arises about the diligence of Chapman in constructing his ditch and the laterals therefrom. The respondent Hartley does not claim any right prior to 1900. The sole question involved and as stated in the brief of the respondent Hartley is:

"To how much land had Mathias Chapman made application of water from the time he initiated his right in 1875 until Hartley, the contestant, initiated his right in 1900?"

The lands of the respective parties to this appeal were surveyed by the state engineer in 1910. In his report to the state water board made in 1911, he

shows 47 acres of cleared and irrigated land in the Chapman tract. In the same report he shows, as cleared and irrigated by the respondent Hartley, 39 acres in the southwest quarter of the northeast quarter of section 4, township 39 south, range 5 west of the Willamette meridian. In due season the respondent Hartley took exceptions to the report of the engineer awarding to Sutton, then successor in interest of said Chapman .79 second-feet to irrigate 47 acres, alleging in his exceptions that Chapman never irrigated or applied the water from said Williams Creek to exceed 5 acres of land prior to the date of Hartley's appropriation initiated in 1900. The issues framed by the exceptions taken by the respondent Hartley were duly tried by the water board from which an appeal was taken to the Circuit Court, which affirmed the award of the water board, and rendered a decree giving to the appellant Blanchard the first right to sufficient water to irrigate 15 acres with a priority of 1875; giving the second right to the respondent Hartley to irrigate 39 acres with a priority of 1900; and the third right to the appellant Blanchard to irrigate 32 acres. From this decree Blanchard appealed.                    MODIFIED.

For appellants there was a brief over the names of *Mr. E. E. Blanchard, Mr. A. E. Reames* and *Mr. Geo. F. Topping,* with an oral argument by *Mr. Blanchard.*

For respondent there was a brief over the names of *Mr. H. D. Norton, Mr. Gus Newbury, Mr. James T. Chinnock, Mr. J. D. Wurtsbaugh, Mr. H. K. Hanna* and *Mr. Wm. M. Colvig,* with an oral argument by *Mr. Norton.*

COSHOW, J.—1, 2. The testimony in this proceed-
ing is unnecessarily voluminous. A great deal of
testimony was directed to a notice, which was re-
corded by Mathias Chapman, who claimed 150 inches
of water from the west fork of Williams Creek. It
is contended that the notice originally read 250 inches.
The only office of this notice is to give notice to the
world of the claim of said Chapman. The question
of a change in the number of inches is not material.
The defendant Hartley made no claim to any of the
water for 25 years after the notice was recorded.
The successors in interest of said Chapman do not
claim to have appropriated the quantity of water
mentioned in the notice. As we understand the rec-
ord, the most claimed now by the successor in in-
terest of the said Chapman, who is the appellant
Blanchard, is .79 second-feet, which the state engineer
designated as sufficient for irrigating 47 acres. The
material question is whether or not the said Chapman
and his successors in interest actually appropriated
that quantity of water. Nor do we deem the state-
ment in the notice material that the water was being
appropriated for milling purposes. It is not disputed
that the water used for milling purposes was taken
from a ditch other than the one described in the
notice and from the opposite side of the stream.
Then, again, the water so used for milling purposes
was not used later than 1890, some ten years before
any right was initiated by the respondent Hartley.
Consequently, the statement in the notice, that the
water was to be used for irrigating and milling pur-
poses, does not in any way affect·the respondent
Hartley: 1 Wiel, Water Rights in the Western
States (3 ed.), §§ 496, 497, and authorities there cited;

*Union Mill & Mining Co.* v. *Dangberg,* 81 Fed. 73, 117.

An excerpt from 2 Kinney on Irrigation & Water Rights (2 ed.), Section 768, is quoted with approval in *In re Willow Creek,* 74 Or. 592, 637 (144 Pac. 505, 520, 146 Pac. 475), as follows:

"The owner may change the use of the water to any other beneficial use, so long as the change does not interfere with the vested rights of others."

3. One of the principal issues was whether or not the Chapman Ditch was enlarged after the death of Mr. Chapman by Graham and Sutton his successors in interest. It would not be helpful to set out the evidence upon this question. We are convinced by a very careful reading and re-reading of the testimony, and comparing the testimony of the different witnesses relating to this issue, that the ditch was not enlarged as alleged by the contestant Hartley, who is respondent here. The witnesses, who testified on behalf of the appellant Blanchard, were in a better position to know the facts upon that issue, some of whom, in addition to Graham and Sutton, gave direct and positive testimony that the ditch was not enlarged. The testimony of the other witnesses, though doubtless indicating their honest belief, is not convincing. Indeed, the witness Graham was not interested in the result after he sold the land in 1909. He says, positively, that he never enlarged the ditch. The witnesses, Gotcher, Hoxie and Topping, who were all disinterested parties, gave quite satisfactory testimony to the effect that the ditch was not enlarged by Graham or Sutton. The contention of the respondent Hartley is that the ditch was enlarged by Graham in 1908, and later further enlarged by Sutton, who was the successor

in interest of Graham. Mr. Topping, who was road
supervisor in 1908 and 1909, testified that the ditch
was not enlarged in either of those years. Mr. Top-
ping was a disinterested witness and was in a position
to know whether or not the ditch was enlarged as
contended by the respondent Hartley.

4. The evidence further states that the acreage
placed under cultivation by Chapman, during his life-
time, was gradually and constantly increased until his
death, which occurred in 1906. The acreage was fur-
ther increased by Graham and Sutton respectively.
There is no doubt that Chapman exercised due dili-
gence in constructing the ditch and applying the
water. Mr. Hartley had actual knowledge of the
application of the water to the land now belonging to
Mr. Blanchard during all of these years. In volume
3, pages 106 and 107 of the testimony, Mr. Hartley
testified in the following language:

"I knowed this that if I taken it out, they had a
right to come in and refuse me" (p. 103). * *
"I never refused Mr. Chapman."

And in pages 106 to 107, he testified to the effect
that he only took the surface water in the creek.
We are satisfied from the evidence that Mr. Hartley
recognized that Mr. Chapman had the first right to
the waters of Williams Creek. No dispute arose
about the water until several years after Mr. Chap-
man died. Even as late as 1910, when Mr. Sutton
protested against Mr. Hartley taking the water from
Williams Creek to his damage, Mr. Hartley did not
dispute Mr. Sutton's right to water absolutely, but
explained his refusal to permit the flow down to the
head of Sutton's ditch by saying in his testimony
that Mr. Sutton wanted to take all of the water. Mr.

Hartley's ditch had its head some distance above the head of the Chapman ditch.

It must be conceded that Mr. Chapman did not use as high a degree of diligence in clearing his land, applying the water and irrigating it, as he might and should have done. But it must be conceded that he did use as high a degree of diligence, as his neighbors and other people situated as he was during his lifetime, in clearing his land and applying the water thereto. It seems he did clear the land he was placing under cultivation of the stumps and trees. It also appears that Mr. Hartley has not cleared the 39 acres of all the trees, but has left many of them standing in his irrigated tract. The diligence required, under such circumstances, is relative, and we are persuaded, that under the authorities cited and after giving full consideration to the situation of the parties to this appeal, that the original findings of fact and order of determination giving to Sutton, who has been succeeded by the appellant Blanchard, .79 second-feet as a first right for the use of 47 acres in three of the smallest legal subdivisions of the northwest quarter of section 3, township 39 south, range 5 west, with a priority of 1875, and to the respondent Hartley, .65 second-feet as a second right for the 39 acres in the southeast quarter of the northeast quarter of section 4, same township and range, with a priority of 1900, was more nearly correct and equitable than the decree appealed from: *Seaweard* v. *Pacific Livestock Co.,* 49 Or. 157, 161 (88 Pac. 963); *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59 (45 Pac. 472, 60 Am. St. Rep. 777); *Smyth* v. *Neal,* 31 Or. 105 (49 Pac. 850); *Gardner* v. *Wright,* 49 Or. 609, 627 (91 Pac. 286); *Rogers* v. *Pitt,* 129 Fed. 932, 942; 1 Wiel, Water Rights in the Western States (3

ed.), §§ 483, 484, Section 141 and authorities there cited.

5. Another question, which arose during the progress of the trial, is whether or not the respondent Hartley should have a right to apply the water to any acreage excepting the southeast quarter of the northeast quarter of said section 4. It seems that some of the acreage under irrigation along this ditch is included in the southwest quarter of the northeast quarter of said section 4. We are of the opinion that Hartley should not be limited, necessarily, to the southeast quarter of the northeast quarter of said section 4, but that the small portion of the tract under irrigation from his ditch in the other 40 acres should be permitted. The decree appealed from will be modified so as to award to the appellant Blanchard .79 second-feet as a first right with a priority of 1875 for the use of 47 acres in the north half of the northwest quarter and the southwest quarter of the northwest quarter of section 3, township 39 south, range 5 west, and to the respondent .65 second-feet as a second right for the use of 39 acres in the southeast quarter of the northeast quarter and the southwest quarter of the northeast quarter of said section 4 with a priority of 1900. In other respects the decree appealed from is affirmed, neither parties to recover costs in either court.        MODIFIED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.