Submitted on motion to dismiss December 14, 1926, motion denied January 11, argued at Pendleton May 3, modified September 14, rehearing denied December 20, 1927.

IN RE DETERMINATION OF WATER RIGHTS OF OWYHEE RIVER.

(259 Pac. 292.)

Waters and Watercourses—Where Water User Intends Using Water-wheel for Irrigation, Notice of Appropriation Should Include Claim of Water Desired for Operating Wheel (Or. L., § 5798).

1. Where water user intends using a water-wheel for irrigation purposes, as permitted by Section 5798, Or. L., his notice of appropriation should include a claim for the quantity of water desired to be appropriated for power purposes.

Waters and Watercourses—Appropriation of Current of Stream to Operate Water-wheel for Irrigation must be Reasonable (Or. L., § 5798).

2. Appropriation of current of a stream to operate a water-wheel for irrigation, as permitted by Section 5798, Or. L., must be reasonable.

Waters and Watercourses—To Permit Appropriation for Operating Water-wheel of Several Times Amount of Water Claimed in Notice of Appropriation Held Unreasonable, Especially Where Others Claiming Small Quantity Would be Excluded (Or. L., § 5798).

3. To permit appropriation for operating a water-wheel, as allowed by Section 5798, Or. L., of several times the amount of

water claimed in claim for irrigation in the notice of appropriation *held* unreasonable, especially where it would take practically the entire flow at low water and deny others the use of a small quantity which they needed.

Waters and Watercourses—Where Contestees had Irrigated Acreage to Best of Their Ability, Decree Allowing Two Years to Complete Inchoate Rights to Water Held Proper.

4.   Where contestees had irrigated acreage to the best of their ability and ditch had been constructed with intent to irrigate additional acreage, allowing two years for them to complete their inchoate rights to water for irrigation of the additional land *held* proper.

Waters and Watercourses—Where No Objection was Made to Showing of Priority in Amended Application Claiming Water Rights, Application Established Prima Facie Case (Or. L., §§ 5734, 5739, 5745).

5.   Where no objection was made in contest in the Circuit Court, under Sections 5734, 5739, 5745, Or. L., to showing of priority in amended application claiming water rights, application *held* to establish *prima facie* case of the truth of the priority claim.

Waters and Watercourses—Where Contestants Made No Objections to Priority Claim to Water Rights, Court's Decree Giving Prior Claim cannot be Questioned on Appeal (Or. L., §§ 5734, 5739, 5755).

6.   Where contestants made no objections to a priority claim, as set out in the amended application of contestees in proceedings under Sections 5734, 5739, 5745, Or. L., the court's decree allowing the prior claim cannot be questioned on appeal.

Waters and Watercourses—Allowing Amendment to Application to Conform to Testimony After All Evidence had Been Taken in Water Rights Contest Held Within Court's Discretion.

7.   Allowing an amendment to application claiming water rights to conform to the testimony after all the evidence in the contest had been taken *held* within court's discretion.

Waters and Watercourses—Evidence Held to Support Court's Finding as to Priority Between Users of Irrigation Ditches.

8.   Evidence *held* to support court's finding that contestant had priority over contestees as users of irrigation ditches.

Waters and Watercourses—Where Contestee was Temporarily Forced to Stop Construction of Irrigation System and Acted in Good Faith, He Did not Thereby Lose Priority Water Rights.

9.   Where it was shown that contestee in a water rights contest had been temporarily forced to stop construction of his irrigation system because of lack of funds, but had acted in good faith and continued construction as soon as possible, *held* that he did not lose priority rights because of temporary inactivity.

From Malheur: C. H. McColloch, Judge.

In Banc.

This case involves the interests of parties claiming water rights on the Owyhee River and some of its tributaries. Only three of the contests waged in the adjudication of the water of said streams are involved in this court. These contests will be disposed of in their numerical order.

Modified. Rehearing Denied.

For appellants there was a brief over the name of *Mr. Percy A. Cupper,* with an oral argument by *Mr. Will R. King.*

For respondents there was a brief over the name of *Mr. W. H. Brooke,* with an oral argument by *Mr. Wm. E. Lees.*

## Contest No. 1.

COSHOW, J.—There are two questions involved in this contest, namely: The right of contestants Wm. F. Stine, Wm. Weidermann and Carlton Fretwell, who are also the appellants here, to be awarded the flow of the Owyhee River to their wheels undiminished in quantity, except by the Happy Valley Ditch as it existed at the time of the contest. The Happy Valley Ditch is owned by J. B. McCain, W. S. Skinner and J. E. McDonnell, who are contestees and respondents here. The other question involved in this contest is the right of the contestee to sufficient water to irrigate not only the land under irrigation at the time of the contest but also additional land subject to irrigation from said Happy Valley Ditch. The appropriation by the contestant, Carlton Fret-

well, by means of his water-wheel is prior to the right of the owners of the Happy Valley Ditch. The rights of the other contestants are subsequent to the rights of the owners of the Happy Valley Ditch.

1, 2. Both the state engineer and the Circuit Court denied the right of the contestants to the undiminished flow of the Owyhee River for the purpose of operating said water-wheels, but allowed to contestants the amount of water they had appropriated by means of said wheels and applied to the irrigation of their land. It is not contended that the notice of appropriation made by Carlton Fretwell, contestant, and filed with the county clerk in 1904, embodied notice of an appropriation of water for power purposes. The contestants claim that such a use of the water is appurtenant to the claim of water for irrigation. The contestants claim that the entire flow of the Owyhee River at low water, estimated to be from 1,800 to 3,000 inches, is necessary to the operation of the contestants' water-wheels. They claim for irrigation purposes only about 400 inches. Using a water-wheel propelled by the current of a stream for irrigation is lawful in this state: Or. L., § 5798. In order, however, for a water user to have a valid appropriation of water for that purpose we believe his notice of the appropriation should have included a claim of the quantity of water desired to be appropriated for power purposes. Even then the appropriation of the current of a stream would necessarily have to be reasonable: *Schodde* v. *Twin Falls Land & Water Co.,* 161 Fed. 42 (212 U. S. 581, 53 L. Ed. 659, 30 Sup. Ct. Rep. 698).

3. It would be unreasonable, in our opinion, to permit a water user whose notice was for a definite quantity of water for irrigation purposes to hold

five or six times the quantity of water so claimed as appurtenant to such claim to operate a wheel for raising the water for irrigation from the stream on to the land of the user. The only conflict with the contestants' claims is the claim of the owners of the said Happy Valley Ditch Company. They were awarded a total of 289.1 acres, provided that amount was being irrigated in two years from the date of the decree. They had already under irrigation about 173 acres. The amount claimed by the contestees is so small compared to the quantity of water in the stream that we think it would be unreasonable to deny them the use of that small quantity of water and allow contestants such a large quantity for a purpose not mentioned in their notice of appropriating water for irrigation.

4. The other question involves the right of contestees to increase the acreage irrigated prior to the adjudication. The evidence discloses that the contestees had added to their irrigated acreage to the best of their ability. There is some controversy about the amount of increase in the irrigated area belonging to the contestee W. S. Skinner. The other two contestees had without question increased the acreage under irrigation. It appears that the Happy Valley Ditch was expensive to construct and expensive to maintain, and that the ditch was constructed originally for the purpose of irrigating even more than the 289.1 acres awarded by the Circuit Court. There is no evidence that such an intention was ever abandoned. The Circuit Court gave contestants until June 7, 1928, in which to bring the additional acreage under irrigation. The principle involved has been determined in this court a number of times and the authorities seem quite uniform: *Wimer* v.

*Simmons,* 27 Or. 1 (39 Pac. 6, 50 Am. St. Rep. 685);
*Blanchard* v. *Hartley,* 111 Or. 308 (226 Pac. 436);
*Taughenbaugh* v. *Clark,* 6 Colo. App. 235 (40 Pac.
153); *Weaver* v. *Eureka Ditch Co.,* 15 Cal. 271; *Sea-
weard* v. *Pacific Livestock Co.,* 49 Or. 157 (88 Pac.
963); 1 Wiel on Water Rights, § 483. These reasons
require the affirmance of the Circuit Court in said
Contest No. 1.

## Contest No. 2.

5, 6. In this contest Graydon C. Crawford, as trus-
tee, is appellant and John Acarregui, Wm. M. Lam-
bert, R. L. Munger, Fred J. Palmer, W. S. Skinner,
John S. Swisher, Thomas Cowgill and Wm. Cowgill
are respondents as to certain findings of the Circuit
Court, and Wm. Maher, J. E. Long, R. E. Dunn,
Julia A. Parks, J. S. Swisher, F. M. Swisher, Cora
Schas and J. B. Duncan are appellants, and Graydon
C. Crawford, as trustee for Laura E. Dinwiddie,
Doris C. Crawford, Ellis L. Brown and Rufus M.
Dinwiddie are respondents as to other findings. The
only question involved in the appeal to this court in
contest No. 2 is that of priority. The evidence in the
proceedings is meager and unsatisfactory. Most of
the evidence adduced by all parties is hearsay. The
appeal of Graydon C. Crawford, as trustee, from the
findings in favor of respondents Acarregui, Lambert
et al. named above, cannot be sustained. The oral
argument preserved and sent up with the other parts
of the record in the Circuit Court discloses that the
attorney for appellant Graydon C. Crawford prac-
tically waived any contest against said respondents
Acarregui et al. The main contention in that contest
was against the finding of the Circuit Court giving

124 Or.—4

to the contestees, Cowgills, a priority of 1865. The
record shows that their original application claimed a
priority of 1883 and 1890. They afterward amended
their claim so as to show a priority of 1865. The
amendment is very general and if it had been at-
tacked might have been held insufficient. No objec-
tion was made to it and, therefore, no evidence was
adduced on their part to sustain it. It was under-
stood that where no objections are made the applica-
tion is sufficient to establish a *prima facie* case, and
the Circuit Court so held. The amendment did not
alter this rule: Or. L., §§ 5734, 5739, 5745. We think
appellant Crawford should not now be heard to ques-
tion the decree of the Circuit Court giving to the
Cowgills a priority of 1865.

7. Attorneys for the appellants Maher et al. who
use water from the Town Ditch state that the only
controversy is as to the priority between the users
from that ditch and the users from the King or
Dinwiddie Ditch. The state engineer found that both
ditches were constructed in 1873 and gave to the users
from the Town Ditch priority over the users from
the King or Dinwiddie Ditch. The Circuit Court
reversed the state engineer and gave to respondent
Crawford as trustee a priority of 1872 instead of
1873. During the taking of the testimony counsel
for Crawford as trustee gave notice to the parties
that he would seek to amend his application for a
water right so as to conform to the testimony and
mentioned that he would claim a priority of 1872 in-
stead of 1874 as mentioned in the original application.
The amendment was not formulated and filed until
after the testimony was all taken. We think the
allowance of that amendment was in the discretion

of the Circuit Court, and that its action should not be disturbed. No additional evidence was taken and no request for taking additional evidence was made.

8. A careful reading of the testimony indicates that the parties produced all the witnesses who could be produced and who had knowledge of the facts. There is some considerable conflict in the testimony as to which of the two ditches, namely, the Town Ditch or the King-Dinwiddie Ditch, was earliest. The most positive of said evidence, however, was given by witness Orr, who testified that he worked for David R. King, who constructed the King-Dinwiddie Ditch. Mr. Orr worked on that ditch in May, 1873. At that time there was a stack of hay on the premises and part of the premises claimed by said King showed that hay had been cut therefrom the year before. Inasmuch as the land did not produce hay in sufficient quantity to justify cutting and stacking, without irrigation it is very reasonable to conclude that the stack of hay on the premises was taken from the premises in 1872, thus establishing the claim made by respondent Crawford that water was first applied to the King premises, now owned by Dinwiddie and others, in 1872. We think the findings of the Circuit Court are supported by the evidence.

## Contest No. 5.

9. Contest No. 5 was waged by Juan Yturriondabetia against L. R. Duncan. L. R. Duncan filed an application for a water right out of Jordan Creek for 186 acres with a priority of 1891. The state engineer awarded to Duncan a water right for 70.6 acres with a priority of 1891 and a water right for an additional 38.5 acres with a priority of 1901. The contestant appealed to the Circuit Court and the state engineer's

findings were set aside. The court awarded to Duncan, the contestee, 14.4 acres with a priority of 1891 and the remainder of the amount awarded to said Duncan by the state engineer was given a priority of 1906. The court based its action on its belief that the contestee, Duncan, had abandoned the work of constructing a ditch from 1898 to 1906. The Duncan Ditch is taken from the Jordan River near its mouth and is constructed over and through very rough, rocky ground for a distance of two and one-half miles. Contestee, Duncan, was seven years building the ditch. From the inception of the work he intended to conduct the water across the Owyhee River where nearly all of his irrigable land is situated. He never abandoned that intention. He got the ditch as far as the river in 1898 but did not get it across the river until 1906. He suspended work because of heavy expenses. He testified that one half a mile of the ditch including an aqueduct across the Owyhee River would cost $6,000. The ditch was very expensive to maintain after it was constructed. As soon as he constructed the ditch across the Owyhee River he applied the water to irrigate his land there. His engineer advised him to siphon the water across the river by laying a pipe in the bed thereof. He did not have sufficient money with which to purchase the pipe. By giving the right of way for the bridge constructed by the county, he was allowed to attach a flume to the bridge and thereby conduct the water across the river. The bridge was constructed in 1906 and the aqueduct across the river was made the same year. We believe the evidence clearly shows an intention on the part of the contestee, Duncan, to convey the water across the Owyhee River as early as 1891,

and that he did not abandon that intention at any time. We concur with the state engineer that he used reasonable diligence as defined heretofore by this court in applying the water to a beneficial use. He was doing pioneer work. His progress was necessarily slow. All of his irrigable land, except about 14 acres, is across the Owyhee River from the Jordan Creek whence he gets the water. His house and other improvements cost about $10,000. His conduct exhibits good faith. Under the authorities cited in this opinion under contest No. 1 herein, we think contestee, Duncan, has complied with the law. His difficulties and his endeavors are very similar to the experience of the contestees McCain, Skinner and McDonnell using water from the Happy Valley Ditch as mentioned under contest No. 1 above.

The decree of the Circuit Court is affirmed as to Contests Nos. 1 and 2 and reversed in Contest No. 5. The findings of the state engineer in Contest No. 5 are approved, that is, the contestee L. R. Duncan is awarded a water right from Jordan Creek for 70.6 acres of land situated in sections 13 and 14, township 31 south, range 41 east, W. M., as of the relative priority of 1891 and 38.5 acres situated in section 10, same township and range, with a relative priority of 1901.                    MODIFIED.   REHEARING DENIED.